## Chicago & Alton R. R. Co. v. Fred Kuckkuck.

1. DOGS—*Liability of a Railroad Company for Injury Resulting from the Bites of.*—A railroad company is liable for damages resulting from the bite of a dog kept by its servant in general charge of its yards with its knowledge and consent, for the purpose of protection against tramps and to prevent thefts of the personal property of its employes.

2. CONTRIBUTORY NEGLIGENCE—*As a Defense to an Action for Injuries Sustained from the Bite of a Vicious Dog.*—Contributory negligence in its ordinary meaning is not a good defense in an action to recover damages for injuries resulting from the bite of a vicious dog, but if a person with knowledge of the evil propensities of the dog wantonly excites him or voluntarily and unnecessarily puts himself in his way, he will be adjudged to have brought the injury upon himself and will not be entitled to recover.

3. INJURIES—*By Dogs—Scienter May Be Established by Attendant Circumstances.*—In an action to recover damages resulting from the bite of a dog, the *scienter* may be established without the necessity in all cases of proving prior injuries by him. Where watch dogs are kept for protection, their dangerous character and knowledge may be inferred from the admitted purpose for which they are kept and the care exercised in their custody.

4. DAMAGES—*Where $850 is Not Excessive for Injuries Resulting from the Bite of a Dog.*—Where a person was bitten by a vicious dog and confined to his house for something like two months with painful wounds, a verdict for $850 is not to be considered excessive.

Trespass on the Case.—Personal injuries resulting from the bite of a dog. Appeal from the Circuit Court of Will County; the Hon. ROBERT W. HILSCHER. Judge, presiding. Heard in this court at the April term, 1901. Affirmed. Opinion filed November 15, 1901.

JAMES R. FLANDERS, attorney for appellant.

DONAHOE & McNAUGHTON, attorneys for appellee.

C. & A. R. R. Co. v. Kuckkuck.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was an action brought by Fred Kuckkuck, through Louise Kuckkuck, his next friend, against the Chicago and Alton Railroad Company, to recover damages for injuries received by him from being bitten by two dogs upon the premises of said company, on July 13, 1899. The declaration charges appellant with wrongfully and knowingly keeping, harboring and controlling the dogs upon its premises, well knowing that they were of a vicious and ferocious nature and accustomed to attack and bite mankind. The general issue was pleaded, the case tried before a jury and there was a judgment and verdict for $850.

About 10 o'clock in the morning of the day in question, appellee, in company with one Parsons, went to the yard office of appellant in the city of Joliet. Parsons was a telegraph operator seeking employment, and not being acquainted with the location of appellant's offices, asked appellee, with whose mother he boarded, to show him the way. The offices in question were in a two-story building, facing east. The ground sloped toward the back of the building so that while the front of the building was upon the ground the back rested upon brick piers some four or five feet in height, thus leaving an open space under a considerable portion of the building. Appellant's yard in which the office was located, and the employes about the same, except the telegraph operators on the second floor of the office, were in charge of C. H. Haskell, who was both yardmaster and freight agent. For several months prior to the time of the injury complained of, James Corcoran, who was yard clerk under Haskell, had kept about the yard, with the knowledge of Haskell, two bull dogs, a male and a female. The female dog at the time in question was loose about the yard, while the male was tied by a heavy chain in the space under the office, the chain being attached to a telegraph wire, so that it could slide along the same and permit the dog to go a short distance from under the building. The dogs appear to have been kept there to protect the property of appellant and especially

for the purpose of keeping away tramps. Upon their arrival at the office, Parsons went upstairs to the telegraph office while appellee sat down upon a bench on the east side of the building near the northeast corner. After remaining there about ten minutes, appellee, to get out of the sun, as he claims, went around on the north side of the building and sat down with his back against the building, or one of the brick piers. Almost immediately he was attacked by one of the dogs, which seized him by the arm, and soon afterward the other joined in the attack. Haskell and other employes came to his rescue and drove the dogs away. Appellee's clothes were torn from him and he was badly bitten upon the arms and legs, many of the wounds being quite deep. He was at once taken to a physician, by whom the wounds were cauterized and dressed, and he was then removed to his home, where he claims he was compelled to remain about two months. At the time of the accident appellee was in the employ of the Elgin, Joliet & Eastern Railway Company, working about the roundhouse and acting in the capacity of extra fireman on engines, earning from $1.25 to $2.60 per day.

Appellant claims that the dogs were kept upon the premises by Corcoran; that in so doing he was not acting within the scope of his employment and that therefore the company should not be held liable for the injuries inflicted by the dogs. The dogs, however, were kept there for the purpose of protecting the premises of appellant from obnoxious trespass on the part of tramps and to prevent the theft of the personal property of the employes. The proof conclusively shows that the dogs were kept on the premises with the knowledge and consent of Haskell. Appellee testified that Haskell, on coming to his rescue, said, " You are badly bitten, ain't you?" and on receiving an affirmative answer continued, " I will tell you what we keep the dogs for, the hoboes went under there;" and further said, " We got the dogs to keep the hoboes away." Haskell not only did not deny saying these things but testified himself that prior to the occurrence he had inquired why the dogs were there

and was told that the public had been committing nuisances under the office and the property of the switchman had been stolen; that the dogs were kept there to keep away men who might commit such depredations; that he made no more comments on it; that he saw a good reason for it and so didn't say anything. Haskell, being in general charge of the yard and the office employes, except the telegraph operators, represented the company, consequently his knowledge of the fact that the dogs were there, must be charged to the company, and his consent that they should be there must also be held to be the consent of the company. Buswell, in his work on Personal Injuries, section 128, states the rule as follows:

" Since the liability for injuries committed by animals rests wholly upon the ground of actual or assumed negligence the actual ownership of the animal is immaterial. * * * Generally, if one permits his servants or agents to keep an animal upon his premises he will himself be responsible as a keeper of such animal; and if he knows that it is so kept, his assent to the keeping will be implied."

In Ray on Negligence of Imposed Duties, at page 621, under the head of duties imposed on owners and harborers of dogs, the following statements are made:

"The duty to protect others against vicious animals is imposed upon the keeper, irrespective of ownership. If a person harbors a dog accustomed to bite, or allows it to frequent his premises, he is liable under the same conditions as if he were the owner. * * * A corporation will be liable if it permits a servant to keep such an animal knowingly."

In the case of Barrett v. Malden & Melrose R. R. Co., 3 Allen (Mass.), 101, a verdict against a horse railroad company for damages incurred by the bite of a dog kept by its servants, was sustained, under a statute rendering the keeper as well as the owner of a dog liable to any person injured by him. It was there said by the court:

" There was evidence at the trial that the dog which inflicted the injury on the plaintiff was kept on the premises of the defendants for several weeks by a person in their employment, who had the charge and superintendence of

their stables; and there was also evidence which tended to show that this was done with the knowledge and implied assent of their general agent or superintendent. This was clearly sufficient to warrant the jury in finding that the dog was kept by the defendants. * * * It was urged by the counsel for the defendants, that they, being a corporation, created for specific purpose, can not, through their officers and agents, be made liable as keepers of a dog, to the penalty prescribed by the statutes. But it is impossible for us to determine, as a matter of law, that a corporation established for the purpose of building and running a railroad by horse power, would be going *ultra vires* in either owning or keeping a dog. On the contrary it would seem to come quite within the scope of the power and authority granted to them to keep dogs to protect their stables and property from incendiaries and thieves."

We are of opinion, therefore, that appellant is, under the circumstances of this case, responsible in law for the action of its servants in keeping the dogs in question upon its premises.

Appellant further claims that appellee is not entitled to recover because he was guilty of contributory negligence in bringing about the attack made upon him by the dogs. In 2 Am. & Eng. Ency. of Law, 2d Ed., page 372, it is said in speaking of contributory negligence as a defense in cases of attack by animals :

" The better view is that contributory negligence in its ordinary meaning is not a good defense in an action to recover damages for injuries sustained from a vicious dog. But if a person with knowledge of the evil propensities of a vicious dog, wantonly excites him or voluntarily and unnecessarily puts himself in the way of such an animal, he will be adjudged to have brought the injury upon himself and will not be entitled to recover."

In this case the proofs show that appellee knew nothing of the presence of the dogs, and did not himself voluntarily bring about the attack made upon him. Indeed, even if contributory negligence could have been shown under the law as a defense, there was sufficient evidence to justify the jury in finding that appellee was guilty of no such negligence on the occasion of the attack made upon him by the dogs.

It is next contended by appellant that "the proof fails entirely to show either that the dogs were of a ferocious and savage disposition and accustomed to attack and bite mankind, or that the appellant had any knowledge of it, were it so." In 2 Am. & Eng. Ency. of Law, 2d Ed., page 369, it is said in speaking of the liability of owners or keepers of dogs for injuries occasioned by them, "The *scienter* may be established by attendant circumstances without the necessity in all cases of proving prior cases of injury."

In the note following it is further said:

"Where watch dogs are kept for protection, the dangerous character and knowledge thereof may be inferred from their size, their actual conduct, the admitted purpose for which they are kept, and the care exercised in their custody. Where it appeared that it was the custom to chain up the dogs every morning at daylight and loosen them only at night, this was held to establish the *scienter*. And in Jones v. Perry, 2 Esp. 482, it is held that where the owner keeps his dog tied and does not permit him to run at large, it must be presumed that the dog is vicious, unruly, and not safe to be permitted to go abroad."

In this case there was ample proof that both the dogs were actually vicious and savage and that they had made attacks upon other persons. We are of opinion that all the attendant circumstances were sufficient to notify Haskell of their ferocious disposition.

The court refused to permit questions concerning the character of the dogs prior to the time of their attack upon appellee, to be answered by certain witnesses. Answers to some of these questions might properly have been permitted but we think appellant got the benefit of such of this evidence as was proper in answers to other questions propounded and answered.

Appellant questions appellee's second instruction because it told the jury that under certain circumstances therein set forth, appellee was entitled to recover, failing, however, to mention the requirement of care or caution on his part. Even if care and caution on the part of appellee were necessary, under the circumstances of this case, the jury were

repeatedly told in other instructions that appellee could not recover if he was guilty of any negligence or carelessness that materially contributed to his injury. The jury, therefore, could not have been misled upon this subject.

The last contention of appellant is that the damages awarded are excessive. We do not think, however, that the verdict is subject to this objection. The attack made upon appellee was a very vicious one and he was severely bitten. His wounds were very painful and he was confined to his house for something like two months. Considering the nature of the wounds and the manner in which they were inflicted, together with the consequences following, we are of opinion that the verdict was fully justified by the facts. We find no reversible error in the record and the judgment of the court below is therefore affirmed.