## Rose L. Abraham, Appellee, v. Christian L. Ibsen, Appellant.

## Gen. No. 24,155.

1. ANIMALS, § 43*—*when shown that dog was roaming at large in violation of ordinance.* In an action for injuries suffered by plaintiff as a result of being bitten by a dog, evidence that the dog had been taken out on the street without a muzzle and had attacked plaintiff as she was about to enter her home, *held* to establish that the dog was roaming at large, on a street or other public place, within the meaning of an ordinance of the City of Chicago.

2. ANIMALS, § 43*—*when shown that dog was taken out of house with permission.* That defendant knew a dog was being kept in his house by his son, and that it necessarily would have to be taken out by the son, sufficiently established that the dog was out with defendant's permission, though he testified that he did not know that the son had taken the dog out upon the occasion in question.

3. ANIMALS, § 43*—*when finding proper that owner of premises is keeper of dog of another.* While the mere fact that a dog is kept by its owner on the premises of another with his knowledge, acquiescence or permission does not of itself make the owner of the premises liable as such, it is also true that a dog may be upon the premises of another under such circumstances that a jury would be warranted in finding that the owner of the premises was its keeper.

4. ANIMALS, § 47*—*when question for jury whether owner of premises is keeper of dog of another.* Where defendant's son brought to the home of defendant a bull dog belonging to his college fraternity and it had remained there with defendant's knowledge, and after it had inflicted the injury complained of defendant had arranged for medical care for plaintiff and had twice interfered to prevent the dog being taken away by the police, the material facts being undisputed but some of the facts with the inferences therefrom being in controversy, the trial court properly submitted to the jury the issue as to whether defendant was the keeper of the dog.

5. ANIMALS, § 14*—*what is immaterial upon question of liability of owner of premises for injuries by dog kept on premises.* The facts that defendant did not affirmatively consent to the presence of a dog in his house but merely acquiesced in it, and that the dog

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Abraham v. Ibsen, 213 Ill. App. 210.

had been brought there only the day previous to the occurrence involved, were immaterial upon the question of his liability as the keeper of the dog, due to its biting plaintiff.

TAYLOR, J., dissenting.

Appeal from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1918. Affirmed. Opinion filed January 29, 1919.

FRED H. ATWOOD, CHARLES O. LOUCKS and VERNON R. LOUCKS, for appellant.

JACOB LEVY, for appellee; JOSIAH BURNHAM, of counsel.

MR. JUSTICE THOMSON delivered the opinion of the court.

This was an action for damages for injuries suffered by the plaintiff as the result of being bitten by a dog which the plaintiff alleges was being kept by the defendant and which had been permitted to roam at large on the street without a muzzle. The jury found the issues for the plaintiff and assessed her damages at the sum of $750. From a judgment for that amount, the defendant has appealed.

In addition to their general verdict, the jury returned four special findings, submitted at the request of the defendant, to the following effect:

Was the dog running at large with the permission of the defendant? Yes.

Was the dog on a street, alley or other public place? Yes.

Was the dog at or immediately before the time of the accident, running at large? Yes.

Was the defendant the owner or keeper of the dog? Yes.

It is appellant's contention that the verdict is contrary to the evidence and that the trial court erred in refusing to instruct the jury to find the defendant not guilty.

There is no material conflict in the evidence as to the facts involved. The plaintiff lived in an apartment building, the entrance to which was within a few feet of the sidewalk. On the evening in question, as she was about to enter the building and was on the steps leading to the outer doorway, with a pet poodle in her arms, she was attacked by a bull dog and severely bitten on both arms. The bull dog was pulled off by defendant's son who appeared just after the dog had attacked the plaintiff. The defendant's home was located a few doors away. His son had returned from Ann Arbor, Michigan, on the previous day bringing this dog with him. It was owned by the college fraternity of which he was a member at Ann Arbor. The dog had remained at defendant's home, with his knowledge, and, on the occasion in question, the son had taken the dog out without a muzzle. After the occurrence referred to, the defendant had a conversation with the doctor who had been called to attend the plaintiff and told him to take care of her and he would pay the bill. Immediately after the occurrence, plaintiff's father called a policeman and accompanied him to the defendant's home. The policeman was going to take the dog to the police station but defendant requested him to leave the dog at his home over night, which was done. On the following day, the policeman and plaintiff's father again went to defendant's home and defendant requested that the dog be left there that day, but plaintiff's father objected and the defendant and his son removed the dog to a veterinary hospital, where it remained for some time, and was never returned to the defendant's premises.

The counts of the declaration on which the judgment is based alleged the existence of an ordinance of the City of Chicago, providing that "No person shall cause or permit any dog owned or kept by him to roam at large on any street, alley or other public place

within the city, at any time, unless such dog shall be securely muzzled so as to effectually prevent it from biting any person or animal,'' and such ordinance was properly proven.

In our opinion, the evidence establishes that the bull dog, upon the occasion in question, was roaming at large, on a street or other public place, within the meaning of the ordinance. Although the defendant testified that he did not know that his son had taken the dog out, upon the occasion in question, he admitted he knew that the dog was in his house, that necessarily it would have to be taken out and that his son would be the one who would take it out, which sufficiently establishes that the dog was out with the defendant's permission. That he was without a muzzle is admitted. That he was ''at large,'' though accompanied by defendant's son, is sufficiently established by the fact that he made a vicious attack upon the plaintiff. Counsel for defendant have urged upon our attention a number of authorities, which they contend, require us to hold the contrary. They are not in point. They are to the general effect that an animal is not ''at large'' if it is under the control of a person having the right of control, or if it has escaped from an inclosure without the owner's knowledge or fault. The latter point is not involved here at all, and the evidence shows that the dog was not within the control of anybody having the right of control. But a more serious question is, was the bull dog owned or kept by the defendant? Of course he did not own it. Can it be said that the evidence establishes that the dog was being ''kept'' by the defendant?

In contending for the negative of that proposition, counsel for the defendant has called our attention to *McCosker v. Weatherbee,* 100 Me. 25; *Collingill v. City of Haverhill,* 128 Mass. 218; *Boylan v. Everett,* 172 Mass. 453, citing *Whittemore v. Thomas,* 153 Mass. 347, and *Muller v. Shufeldt,* 114 N. Y. Supp. 1012.

In *McCosker v. Weatherbee, supra,* the defendant was sued as the keeper of a dog, by which plaintiff had been bitten. The dog in question was kept at the defendant's stable and was about the premises more or less. It was owned by defendant's son, who was 33 years of age. The defendant both forbade and prevented the dog's presence in the house. The son had the care, custody and control of the dog and, whenever absent from home, employed the hostler to take charge of him. The court held that inasmuch as the defendant was shown not to have the care, custody and control of the dog, he could not be charged as keeper, and a directed verdict for the defendant was upheld.

In *Collingill v. City of Haverhill, supra,* the plaintiff was bitten by a dog owned by and licensed in the name of the superintendent of the poor farm of the defendant city. It was kept at the farm with the knowledge of, and without objection by, one of the overseers of the poor of the city, and was allowed the run of the farm. The court held that the defendant was not liable as the keeper of the dog, it not having been shown that it was given the run of the farm for the benefit of or in the interest of the defendant.

*Boylan v. Everett, supra,* was an action in tort for injuries caused by the bite of a dog, which plaintiff alleged was kept by the defendant. The evidence showed that the defendant was a widow and was the owner of the premises in question. Her nephew, who was over 21 years of age, boarded and lived with her and he was the owner of the dog and kept him on defendant's premises with the latter's consent, and she testified that she fed and caressed the dog, called it in and sent it out, and that it was treated the same as anybody would treat a dog which they had in their home, and that she took care of it when her nephew was away. There was a verdict for the defendant from which the plaintiff appealed, contending that, on the facts presented, the court should have ruled, as

a matter of law, that the defendant was liable as the keeper of the dog, but the court held that, while the facts testified to were evidence of keepership, they were not conclusive and the judgment was affirmed.

In *Whittemore v. Thomas, supra,* the dog in question belonged to one Rogers, who was an employee of the defendant, and lived with him on his farm. Rogers bought the dog and brought it to the farm and kept it there without any permission from the defendant other than mere acquiescence. The dog had the run of the farm, including defendant's house. The defendant testified that he never exercised any control over the dog and had nothing to do with it in any way. The trial court held that the defendant was the keeper of the dog and directed a verdict for the plaintiff, leaving only the question of damages to the jury. The court, on appeal, held that no doubt a dog may be upon the premises of another under such circumstances that a jury would be warranted in finding that the owner of such premises was the keeper of it, citing *Barrett v. Malden & M. R. Co.,* 3 Allen (Mass.) 101. The court further pointed out that there was no direct testimony that the dog was on the premises in question "for the benefit or in the interest of the defendant," although the jury might have so inferred from the testimony. The court said they could not say that the jury would not have found that the defendant was not the keeper of the dog, and that the trial court had erred in not leaving the issue of liability to the jury on all the facts in evidence. Under an agreement of the parties that, if the trial court was not upheld, judgment was to be for the defendant, the court, on appeal, entered that judgment, although the court expressed the "fear that this agreement does not sufficiently protect the plaintiff's rights," thus intimating that the verdict of a jury for the plaintiff, on the facts presented, would have been upheld.

In *Muller v. Shufeldt, supra,* the dog in question was

owned by a son of the defendants, who were Mr. and Mrs. Shufeldt. The premises where the family lived were owned by the mother and the dog was kept in the family. The plaintiff recovered and the defendants appealed. It was held that the father was not liable as the ownership of the premises in question was in his wife and not in him, and scienter was not proven as to him, citing *Quilty v. Battie,* 135 N. Y. 201, a similar case where it was held that the wife was liable, because it was shown she kept and harbored the dog, knowing it was vicious, and a judgment against the husband, based on his marital liability for the acts of his wife, was error as it was not shown that he knew of the vicious propensities of the dog.

None of these cases can be said to be authority for the proposition that, on all the facts in evidence in the case at bar, it should be held, as a matter of law, that the defendant was not the keeper of the dog here involved, although none of the material facts seem to be in dispute.

Other cases in which the courts of this country have had occasion to pass upon the question here under consideration are the following:

In *Bundschuh v. Mayer,* 81 Hun (N. Y.) 111, the plaintiff sued to recover damages for injuries resulting from an attack by dogs, alleging they were kept by the defendant. The defendant was a householder, occupying, with his family, premises belonging to his wife. He was a milkman and kept horses and wagons and cows on the premises and also the dogs in question. He testified that he did not own the premises or the dogs. The court distinguished the case from *Quilty v. Battie, supra,* cited and followed in *Muller v. Shufeldt, supra,* where a husband was sought to be held liable on the ground of his marital liability for the torts of his wife and held that the evidence established that the dogs were kept and harbored by the defendant, and the court affirmed the judgment

against him, saying: "The cardinal facts which determine his liability are that he was the head of the household; that as such he occupied the premises; that he supported his family, and with them the dogs which were kept on the place. They were, as to the public, his dogs, and they were unquestionably kept and harbored by him."

The case of *Cummings v. Riley,* 52 N. H. 368, called for construction of the term "keeper of a dog," as used in a statute under which the action was brought, and which authorized a recovery, from the owner or keeper of a dog, of double damages for an injury inflicted by such dog. The dog was owned by defendant's son. As to what would constitute one the keeper of a dog, the trial court, among other things, told the jury that if the head of a family, having the possession and control of a house or premises, suffer or permit a dog to be kept on the premises, in the way such domestic animals are usually kept as a member of the family, so to speak (in so far as the house dog may be termed a member of one's family) such head of a family may be regarded the keeper of the dog, within the meaning of the statute. The defendant appealed from a judgment for the plaintiff, contending that the dog was the property of his son and was not owned or kept by him but was only harbored and suffered to remain on his premises; that if he is held liable, then every person who keeps boarders for pay, and suffers or permits such boarders to have or keep a dog on his premises, is a keeper of such dog. But the court held that, under the instruction given, one could not be held liable who harbors a dog and permits it to remain temporarily upon his premises, in the manner the defendant had suggested. The court said further that they did not understand the language of the trial court as furnishing or that it was intended to furnish a legal definition of the term "keeper of a dog," but merely as furnishing an illustration which should assist the jury in their

duty of deciding, as a question of fact, whether, under all the circumstances of the case, the defendant was in reality the keeper of the dog; that the instruction was extremely favorable to defendant and that the verdict of the jury was conclusive of the fact that the defendant was, in the strictest and most unequivocal sense, the keeper of the dog. The court further said that it was "immaterial whether the defendant's son was a minor or not, and whether he was the owner of the dog or not. The defendant was the head of the family in which the dog was kept. He had absolute control of the premises, and he had the power to expel the dog and its owner; instead of which he suffered the dog to remain, as a member of his family."

In *Jenkinson v. Coggins,* 123 Mich. 7, a woman who owned the house in which she lived, and who exercised absolute control over it and over all the property connected with it, was held to be the keeper of a dog belonging to an adult son who lived with her.

In *Plummer v. Ricker,* 71 Vt. 114, the dog in question belonged to the defendant's minor son. The trial court told the jury that if the son was stopping at the defendant's house and the defendant permitted him to have the dog there, and permitted the dog to make that place his home and to be, as much as a dog can, a member of his, the defendant's, family, then the dog would not be there casually and that the duty would rest upon the defendant to see that while he was thus there he was properly restrained, if he knew that he was accustomed to bite persons, and that under the circumstances named, the defendant would be, within the meaning of the law, the keeper of the dog. What the court says in that case seems to us to be applicable to the facts here involved, although the element of scienter was necessary to be shown, under the issues made in the case cited, but is not involved in the case at bar.

In *Jacobsmeyer v. Poggeweller,* 47 Mo. App. 560, it was held that if a person harbors a dog, or permits

his servant to keep such an animal on his premises, this will constitute such person a keeper of the animal within the meaning of the law.

Buswell, in his work on Personal Injuries, sec. 128, says: "Generally, if one permits his servants or agents to keep an animal upon his premises, he will himself be responsible as a keeper of such animal; and if he knows that it is so kept, his assent to the keeping will be implied." In Ray on Negligence of Imposed Duties, at page 621, the author says: "If a person harbors a dog accustomed to bite, or allows it to frequent his premises, he is liable under the same conditions as if he were the owner."

In *Barrett v. Malden & M. R. Co., supra,* a verdict for damages, incurred by the bite of a dog kept by servants of the defendant, was sustained, under a statute rendering the keeper as well as the owner of a dog liable to any person injured by him.

In *Chicago & A. R. Co. v. Kuckkuck*, 98 Ill. App. 252, the authorities last referred to, were cited with approval, and are applicable here, although in that case the issue was one of common-law liability. Shearman & Redfield on Negligence (6th Ed.), sec. 635, p. 1671, is to the same effect.

While it is true that the mere fact that a dog is kept by its owner on the premises of another with the knowledge, or acquiescence or permission of the owner of such premises, does not of itself make the owner of said premises the keeper of the dog and liable as such, it is also true that a dog may be upon the premises of another under such circumstances that a jury would be warranted in finding that the owner of such premises was the keeper of it. While the material facts were undisputed in the case at bar, some of the facts in evidence, with the inferences to be drawn therefrom, were in controversy and we think the issues were properly submitted to the jury, and under the authorities we have referred to rather fully (as the exact issue involved seems not to have been passed

upon in this State), we are of the opinion that the trial court properly overruled defendant's motion to instruct the jury to find him not guilty.

The fact that the defendant did not affirmatively consent to the presence of the dog, but merely acquiesced in it, and that the dog had been brought home only the day previous to the occurrence here involved, is quite immaterial.

For the reasons stated the judgment of the Superior Court is affirmed.

*Affirmed.*

MR. JUSTICE TAYLOR dissents.