THE VILLAGE OF NORTHBROOK, Plaintiff-Appellee, *v.* JOHN M. CANNON, Defendant-Appellant.

First District (1st Division) No. 77-1469

Opinion filed June 12, 1978.—Rehearing denied July 10, 1978.

316

John M. Cannon, of Northbrook, for appellant, *pro se.*

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago (Frederic O. Floberg and Christopher J. Duerksen, of counsel), for appellee.

Mr. JUSTICE BUCKLEY delivered the opinion of the court:
Defendant was charged with permitting his dogs to run uncontrolled, thereby causing a nuisance in violation of the Northbrook Animal Control

Ordinance. After a bench trial in the circuit court of Cook County, he was found guilty and assessed $40 in fines and $20 in costs. In this appeal he contends that the trial court erred in its interpretation of the ordinance as it applied to the facts presented.

The facts in this case are set out in a bystander's report of proceedings submitted pursuant to Supreme Court Rule 323 (Ill. Rev. Stat. 1977, ch. 110A, par. 323) and certified by the trial court as accurate. No verbatim transcript of the trial was taken. The report of proceedings provides, in pertinent part:

> "At trial without a jury before the Honorable Edward M. Fiala on May 4, 1977, Officer G. Manes testified that on March 19, 1977, he picked up two dogs after he observed them running along the Strand near Newport in the Village of Northbrook, Illinois.
>
> He further testified that the dogs were impounded by him and later picked up by defendant's daughter who presented evidence of proper rabies innoculation and Village licenses.
>
> On April 16, 1977, Officer Manes testified that he picked up the same two dogs in back of premises near Willow and The Strand and informed defendant's minor son that the dogs would be taken to the police station because the officer wanted to deliver them to his parents instead of to a minor and that defendant later picked up the dogs from Officer Manes at the police station.
>
> On cross-examination, Officer Manes stated that he did not observe defendant on either occasion except at the police station on the later date and that he did not know of any evidence that defendant caused, permitted, or even was aware of the dogs being out on either occasion except the fact that the dogs were out.
>
> Defendant testified, without contradiction or challenge, that he was away from home and outside Northbrook at the time of each pickup and that the dogs were safely inside his home at the time he had left on each date."

Although the date shown on the complaint, April 6, and the date testified to, April 16, are conflicting, it is evident that defendant was prosecuted for four violations, *viz.*, two violations on each of the two dates in question. The record further shows that defendant testified that at two earlier trials he had been found not guilty of charges relating to comparable sections of an earlier animal law, where the words "cause" or "permit" had been interpreted to require defendant's knowledge that his dogs were running uncontrolled and the word "owner" had been interpreted to require that defendant have a property interest in the dogs. Defendant alleged that the court should be bound by these former interpretations.

At the conclusion of the trial, the court found the ordinance in question

was *malum prohibitum* and no proof of intention or awareness of an alleged violation was required. It further found that defendant was the owner of the dogs in question, notwithstanding the absence of any proof that defendant had "the right of property" in the dogs. Consequently, defendant was found guilty and assessed a fine and costs. Defendant's motion to vacate the judgment was denied and this appeal followed.

The pertinent provisions of the Animal Control Ordinance provide:

"16.1(c) 'Animal Nuisance' is created when an animal owner permits his animal to: (1) run uncontrolled:

16.1(p) 'Harborer' is any person who provides food and shelter for any domesticated animal on other than a periodic or temporary basis.

16.1(q) 'Owner' is any person having right of property in any animal; who keeps an animal; who has an animal in his care or custody; or who knowingly permits an animal to remain on or about any premises occupied by him.

16.10 *Nuisance Prohibited.* It shall be unlawful for the owner or harborer of any dog, cat or other domestic animal to cause or permit such animal to perform, create or engage in any nuisance as defined by Paragraph 16.1(c). Any animal found acting in any way forbidden by this Chapter, in the determination of the Animal Control Officer, shall hereby be declared a nuisance and its owner or harborer shall be subject to citation."

Defendant's first contention is that the village never proved that he had a right of property in the dogs. He argues that "person having right of property" is the *sine qua non* of the definition of ownership of section 16.1(q). The village responds that "person having a right of property" does not modify the following specifications and that a property interest need not be shown to establish liability.

■■ Defendant's contention cannot withstand even a cursory examination of the language of the ordinance. Sections 16.1 (p) and (q) clearly establish two categories of persons to whom responsibility for animal nuisances will attach, "harborers" and "owners," and define each. Defendant contends that the distinction between owners and harborers lies in the owners' having a right of property in a given animal, and that the remaining language in the definition of an owner merely describes kinds of owners. Such a contention is supported by neither logic nor punctuation.

■■ Logically, there is no reason for definition to both define and give examples without indicating a change of purpose. Moreover, it is apparent that the distinction between an owner and a harborer lies in the degree of active involvement of the person in the animal's care and control. A harborer need only provide food and shelter, whereas an

owner either has property rights in an animal, keeps an animal, cares for the animal or knowingly permits it to remain about.

Moreover, the result of defendant's construction would be that owners are only those persons who, having rights of property in animals, engage in certain conduct, and that persons with property rights who do not engage in the listed types of conduct are not owners.

Shifting to a punctuation argument, the defendant attempts to impose his construction of the ordinance by taking advantage of the absence of the word "either" in section 16.1(q) and by advancing an incorrect interpretation of the use of semicolons in that section. Defendant argues that, since semicolons separate independent clauses, it would be necessary to place a semicolon after the word "person" to make the requirement of a right of property in an animal an alternative to the clauses which follow rather than a prerequisite to them. Such a proposition is absurd, since semicolons already separate all four clauses and the function of a semicolon placed after the word "person" would be to separate the first of these clauses from the clause which all four succeeding clauses modify.

■■ Additionally, defendant ignores the "or" preceding the final clause, which indicates an intent that the preceding clauses be considered disjunctive, so that a person fitting the standard set by any one of them qualifies as an "owner" under this definition.

In any case, this semantic exercise is not crucial to the village's case, because the village has argued on appeal in the alternative that the defendant is a "harborer" and there was ample evidence in the record to establish that defendant harbored the dogs as defined in section 16.1(p). It is well settled that on appeal the correctness of the trial court's action, and not its reasoning, is the subject of review. (*Stigler v. City of Chicago* (1971), 48 Ill. 2d 20, 268 N.E.2d 26.) In general, the appellee may urge any point in support of the judgment on appeal, even though not directly ruled on by the trial court. *Shaw v. Lorenz* (1969), 42 Ill. 2d 246, 246 N.E.2d 285; *City of Rockford v. Maxwell* (1968), 92 Ill. App. 2d 336, 234 N.E.2d 563.

■■ In the instant case defendant was charged with creating a nuisance in that he permitted his dogs to run uncontrolled. It was not specified whether the village was relying on the proof that defendant was the owner or harborer or both. There was a factual basis for deciding whether defendant was harboring the dogs, and there appears to be no reason to depart from the general rule in a civil case which would allow the village to rely on proof that defendant was harboring the dogs. The prosecution for violation of the municipal ordinance punishable by fine only is quasi-criminal in nature, and is to be tried and reviewed as a civil case (*City of Chicago v. Groffman* (1976), 42 Ill. App. 3d 139, 354 N.E.2d

572, *rev'd on other grounds* (1977), 68 Ill. 2d 112, 368 N.E.2d 891; *City of Highland Park v. Curtis* (1967), 83 Ill. App. 2d 218, 226 N.E.2d 870), unless there is a reason, stemming from the quasi-criminal nature of the action, to depart from the procedures in the ordinary civil case (*City of Carbondale v. Irving* (1977), 45 Ill. App. 3d 699, 360 N.E.2d 118). This case presents no basis for departure from the general principles heretofore set forth.

■■ Defendant's own testimony showed that on two separate occasions the dogs were safely inside his home at the time he left. This testimony, along with reasonable inferences flowing from the other evidence, adequately established that defendant was harboring the dogs and would be liable as such.

Defendant's second contention is that the village never proved that he "permitted" the dogs to create a nuisance. He argues that "permit" implies knowledge thereof and consent thereto. The village replies that section 16.10 is *malum prohibitum* and that no proof of intent is required.

The village analogizes the situation to cases decided under provisions of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1001 *et seq.*). In *Meadowlark Farms, Inc. v. Pollution Control Board* (1974), 17 Ill. App. 3d 851, 308 N.E.2d 829, a water pollution case, petitioner was charged with causing and allowing the discharge of contaminants. The court held that petitioner's alleged lack of knowledge was no defense, because the Environmental Protection Act was *malum prohibitum,* no proof of knowledge of *mens rea* being necessary to find guilt. Similarly, in *Hindman v. Pollution Control Board* (1976), 42 Ill. App. 3d 766, 356 N.E.2d 669, an air pollution case, petitioner was charged with causing and allowing open burning in a sanitary landfill, and the court held that knowledge was not required to establish liability. See also *Bath, Inc. v. Pollution Control Board* (1973), 10 Ill. App. 3d, 507, 294 N.E.2d 778.

The parallel drawn by the village between its animal control ordinance and the Environmental Protection Act is clear. Both measures are directed at making the day-to-day surroundings of citizens safe and salutary by deterring acts which result in the introduction into those surroundings of unsafe, unsanitary or unpleasant factors. In the one case, particulate and gaseous pollutants in the air and water impair the safety and pleasantness of activities in these media, and in the other, unrestrained activity of animals whose existence is supported by humans threatens the safety and pleasantness of streets, parks, sidewalks and yards.

Likewise, both measures create for deterrent effect purely statutory offenses punishable solely by fines.

In the cases cited by the village, the basis for holding that *mens rea* was

not required was their interpretation of the word "allow" as used in Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1012(a)), which makes it a punishable offense for a person to "allow" discharges that result in pollution. (See, *e.g.*, *Meadowlark Farms, Inc. v. Pollution Control Board* (1974), 17 Ill. App. 3d 851, 308 N.E.2d 829, 836-37.) The analogy between "allow" and "permit," as used in the animal control ordinance before us is obvious. Equally obvious is the parallel purpose served by these two words. Each measure focuses on prevention of a harmful result which may be caused by the action of a range of persons from bystanders to those holding legal title to the pollutant or animal whose release would adversely affect the environment. Accordingly, both make punishable passive activity by persons who obtain some benefit from the continued existence of the potentially harmful agent. The result is that the persons who benefit pay for this benefit by being responsible for prevention of release of their charges. This rule is not only fair, but necessary for the efficient enforcement of such prohibitions. Were punishability linked to *mens rea,* a major investigation would be required each time a discharge of liquid waste or running loose of animals was discovered. Rather than incur the expense of such investigations, offenses of this sort would go unpunished and there would be no deterrent effect to these measures because it would soon become obvious that their bark was worse than their bite.

We find, therefore, that these cases are controlling in their holdings that lack of knowledge or intent is not a defense to a violation of a prohibition punishable by fine which provides for liability for allowing or permitting a given result.

■■ Accordingly, defendant's liability was properly established at trial.

Defendant's final point is that the trial court was bound by certain determinations in prior proceedings between the village and defendant which resulted in the dismissal of charges. Specifically in a former case, Judge Breen had held that, to find a person responsible, the person charged must be aware that the animal is at large. In another case, Judge Gomberg held that the village must prove that defendant had a property interest in the animal. The village did not appeal from these adverse findings. It is to be noted that these prior charges pertained to an earlier, yet similar, animal control law.

Defendant asserts specifically that the doctrine of *res judicata* would bar further actions against him for violations of the village animal control ordinance.

■■ It is difficult to imagine what the defendant means, since *res judicata* requires not only an identity of parties but also an identity of subject matter and cause of action. (*Boddiker v. McPartlin* (1942), 379 Ill.

567, 577, 41 N.E.2d 756, 761.) Here the subject matter is an entirely new offense, and moreover the cause of action has changed because the village's ordinance had been amended in the meantime.

■■ If the defendant meant to say that it was collateral estoppel that barred further actions against him, he would be equally wrong. That doctrine precludes parties and their privies from relitigating facts in a subsequent action which were specifically litigated and determined in a prior action. (*Lange v. Coca-Cola Bottling Co.* (1969), 44 Ill. 2d 73, 254 N.E.2d 462; *Hinkle v. Tri-State Transit, Inc.* (1974), 21 Ill. App. 3d 134, 315 N.E.2d 289.) Defendant was asking the court below to follow trial court's previous constructions of an ordinance. The construction of an ordinance is a question of law. (*Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450; *Johnson v. City of Evanston* (1976), 39 Ill. App. 3d 419, 350 N.E.2d 70.) Collateral estoppel pertains to the relitigation of facts, not to questions of law.

It is possible that defendant was confused as to the applicability of *stare decises* to render him immune from village enforcement efforts. This doctrine is of no assistance to the defendant, however, because courts are not bound to follow decisions of equal or inferior courts under that doctrine, but only the decisions of higher courts. See *Field v. People* (1839), 3 Ill. (2 Scam.) 79, 98-99.

For the above reasons, we find that the trial court correctly interpreted and applied the village's ordinance and that it was in no way prevented from doing so by any prior decisions of other trial courts. Accordingly, we affirm.

Affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.