DANNY L. KEMPER, Plaintiff-Appellant, *v.* McDOUGAL-HARTMANN COMPANY *et al.*, Defendants-Appellees.

Third District   No. 3—83—0596

Opinion filed September 6, 1984.

James E. Bowles, of Goldfine & Bowles, P.C., of Peoria, for appellant.

Steven A. Wakeman, of Strodel, Kingery & Durree, Associates, of Peoria, for appellees.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff Danny Kemper was injured when his motorcycle crashed into an excavation in the center of West Washington Street in East Peoria, Illinois, about 1:30 a.m. on May 19, 1978. Plaintiff filed suit against defendant McDougal-Hartmann Company, the contractor for the street-widening project involved, alleging that improper warnings were posted at the construction site. Following a jury trial, judgment was entered on the verdict in favor of defendant, and plaintiff has appealed. Two issues are raised: (1) Was the evidence sufficient to support the verdict in favor of defendant, and (2) Were the improper closing argument statements of defendant's counsel so prejudicial that plaintiff was denied a fair trial.

McDougal-Hartmann entered into a contract with the city of East Peoria to widen West Washington Street and to install new curbs, and under the terms of the contract, the contractor was responsible for the installation and placement of barricades and for the channeling of traffic safely through the construction area. West Washington Street was to be kept open to two-way traffic at all times. The contract also specified that traffic control was to be done in accordance with "U-2 Standard," a portion of the standard specifications for traffic control adopted by the State of Illinois Department of Transportation.

At the time of the accident in question, the street had been widened so that it consisted of two lanes in each direction. However, the inside lane of the eastbound lanes had been blocked off because of a construction hole about 35 feet long, 11 feet wide, and 3 to 4 feet deep. Defendant placed numerous lighted reflectorized barricades to mark the hazards of the construction area and to channel eastbound traffic around the hole. There were signs in advance of the construction area warning, "ROAD CONSTRUCTION AHEAD," "DETOUR AHEAD," and "KEEP RIGHT." Traffic was channeled into the right-

hand lane of the two eastbound lanes by means of the signs and by an arrangement of barricades which tapered to the right side of the excavation.

Plaintiff testified that on the night in question he had worked late as a helper in an auto salvage yard, that he was on his way to the home of one of his fellow employees, that he had taken a longer route than necessary because it was a nice evening for a ride on his motorcycle, that he saw some barricades which he thought were outlining the curb, that he assumed the road was being widened and proceeded to drive down the center of the eastbound lanes, and that he then saw a railroad tie placed across the road. He was approximately five feet away when he saw the tie and was unable to stop. He plunged into the excavation, and his motorcycle landed on top of him. He stated that he saw no warning signs and no barricades in front of the excavation.

Other witnesses did see advance warning signs and also were able to describe the arrangement of barricades. These witnesses included the project engineer, the job superintendent, and the investigating police officer. Additionally, there was disputed testimony as to whether plaintiff had consumed alcoholic beverages prior to the accident. Plaintiff denied having had any alcoholic drinks, but the police officer testified that in his opinion plaintiff was intoxicated, and the emergency room nurse who attended plaintiff made a written note that plaintiff said he had had three beers.

In challenging the verdict entered in favor of defendant, plaintiff first argues the verdict was contrary to the manifest weight of the evidence. For the purpose of this argument, plaintiff characterizes the evidence as establishing violations of the safety standards required under the construction contract. For example, plaintiff says that the evidence "clearly shows" that 50% of the barricade flashers were not operating at the time of the accident, that defendant made an improper partial lane closing, that improper warning signs were used, and that the taper in front of the excavation was not 10 times longer than the width of the excavation (as required by the safety manual) but was only 50 feet in length.

Plaintiff gives no credence to the testimony of defendant's witnesses, who stated that the signs, barricades, lights and flashers and other traffic control devices were properly in place, visible, and working at the end of the workday before the accident and at the beginning of the workday the next morning. The project engineer testified that the barricades used were in conformity with applicable safety standards and were arranged in the required 10-to-1 taper leading

traffic away from the hazard. This testimony, as well as that of other witnesses, supports defendant's claim that the excavation was adequately marked. The State specifications for controlling traffic around a construction site expressly provide for modification to permit "a reasonable reduction" of certain requirements and also authorize the exercise of engineering judgment and discretion in making adaptations, provided that the general principles and standards are followed. Some modification was clearly required here, since the U-2 standard applied to construction areas which block the right lane of traffic rather than the inside lane. Hence, there was ample evidence to support a finding that defendant did not violate the safety standards set out in the U-2 specifications, as modified to meet the requirements of this particular situation.

■ It is a basic rule of law that a reviewing court, when considering whether a verdict was contrary to the manifest weight of the evidence, must view the evidence in the light most favorable to the appellee (here, defendant) to determine whether the verdict was palpably erroneous and wholly unwarranted. (*Lynch v. Board of Education* (1979), 72 Ill. App. 3d 317, 390 N.E.2d 526.) Here, the evidence was sharply contradictory concerning safety violations, but we must view it in the light most favorable to defendant. In doing so, we conclude that plaintiff is not entitled to a new trial on the ground that the verdict was contrary to the manifest weight of the evidence.

Plaintiff also argues that the jury must have found that the sole proximate cause of the accident was plaintiff's own negligence. Plaintiff insists that such a finding was erroneous and would indicate that the jury was prejudiced by certain improper and inflammatory remarks made by defendant's attorney during closing arguments so that he was denied a fair trial. Plaintiff reasons that prejudice must have occurred, since the evidence of his intoxication was conflicting and since the evidence indicated that defendant was guilty of safety violations. We cannot agree with plaintiff's analysis.

We have carefully reviewed the closing arguments of the parties. On nine occasions during an argument lasting 1 hour and 15 minutes, the court sustained plaintiff's objections to defendant's arguments. Several of the objections occurred when counsel stated "I believe ***" or "I think ***." When these statements are viewed in context, most of them appear to be a manner of speaking rather than an attempt to assert counsel's beliefs into the trial. Near the end of the argument, defendant's counsel described an incident when he broke his arm but did not sue anybody because it was his own fault. This statement was stricken, but defense counsel persisted in pointing out that

plaintiff has to bear the responsibility for his own negligence. A few moments later, counsel commented, "People have been crying to get intoxicated drivers off the roads ***." This, too, was stricken, and the jury was instructed to disregard it. The court also instructed the jury that they were not to consider the closing arguments of counsel as evidence.

▮ Plaintiff argues that the trial court had a duty to inject itself into the proceedings sufficiently to see that the litigants received a fair trial and, where necessary, to act promptly to stop misconduct. Plaintiff relies upon *Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249, where the court said:

> "In a clear case this court will reverse a judgment because of improper conduct and prejudicial statements of counsel even though the trial court has sustained objections thereto, rebuked counsel, and directed the jury to disregard such statements." (8 Ill. 2d 293, 313, 134 N.E.2d 249, 259.)

We do not disagree with the general principle enunciated in *Belfield*, and though we do not condone defense counsel's remarks in the case before us, we cannot characterize this as "a clear case" of improper argument so prejudicial as to deny plaintiff a fair trial.

The trial court was in a far better position than a reviewing court to determine the extent of any prejudicial effect of improper arguments that were objected to and stricken. We cannot say that the improper remarks here were as inflammatory as those complained of in *Belfield*, where counsel referred to the opposing parties as "thieves," "usurpers," and "defrauders" with absolutely no basis in the evidence for lumping all parties in one category. Giving consideration to the totality of the closing arguments here, we believe the trial court did not abuse its discretion in refusing to order a new trial.

For the reasons stated, we affirm the judgment of the circuit court of Peoria County.

Affirmed.

HEIPLE and SCOTT, JJ., concur.