DORIS THOMPSON *et al.*, Plaintiffs-Appellants, v. DAVE DAWSON *et al.*, Defendants-Appellees.

Fourth District   No. 4—85—0260

Opinion filed September 30, 1985.—Rehearing denied October 28, 1985.

Stanley Thompson and Doris Thompson, both of Bloomington, for appellants, *pro se.*

James P. Ginzkey, of Costigan & Wollrab, of Bloomington, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:
Plaintiffs brought this action against defendants James Stubblefield and Dave Dawson to recover for injuries sustained on August 6, 1982, when a large black Labrador dog ran in front of the motorcycle

plaintiffs were riding and was struck. Plaintiffs sued defendant Stubblefield as the owner of the dog and Dawson as the keeper or harborer of the dog as under section 16 of the Animal Control Act (Act) (Ill. Rev. Stat. 1983, ch. 8, par. 366). After bench trial, the circuit judge entered a memorandum opinion and order in favor of the defendants, and against plaintiffs, after concluding that the evidence did not establish that either defendant met the statutory definition of "owner." We affirm.

At the hearing, Jane Canfield testified that the black Labrador dog, a stray, had been observed in the rural McLean County area during the summer months of 1982. She first saw it near her own home on Monday, July 26, 1982. She tried to run the dog off, but it came and went. The following Sunday, the black dog was at her church, jumping all over people. Canfield testified that the Stubblefields took the dog in their truck, in order to get it away from the small children at the church.

Betty Stubblefield, wife of defendant James Stubblefield, testified that she and her husband took the dog to their property and let it loose. They had a dog of their own, which they kept in the basement at night, and had no intention of keeping the black dog. However, Mrs. Stubblefield testified that she could not stand to see a dog go hungry, so she put separate bowls for food and water near a tree for the black dog. They intended to find it a home or take it to the animal shelter. On Monday, the dog came and went from their property. On Tuesday, they did not see the dog, and it had not been there to eat. On Wednesday morning, she and her husband left for Freeport, where her husband was to attend assessor's school through Friday. She further testified that Dave Dawson fed their animals when they were away and that she asked him to do so on this occasion. As to the black dog, she asked Dawson to keep food and water under the tree, but if the dog did not come around not to look for it because it was going to the animal shelter when they returned if no one had taken it.

Defendant James Stubblefield testified, largely corroborating the testimony of his wife. He stated that the dog was on the barn lot on Wednesday morning, when they left for Freeport.

Dawson testified, largely corroborating the testimony of the Stubblefields. He testified that he never actually saw the black dog eat or drink at the Stubblefield property. He said the extra food he put out would disappear at night sometimes, but other times would not. He saw the dog on the Stubblefield property on the barn lot on one day when he went to take care of their animals, but other than that had nothing to do with the dog and never petted or came into contact

with it. The black dog ran into the road from *Dawson's* property, one half mile from the Stubblefield property, on the day of the accident. Dawson testified that he had not seen the dog on his property before the accident.

Section 16 of the Act provides:

> "If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the *owner* of such dog or other animal is liable in damages to such person for the full amount of the injury sustained." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 8, par. 366.)

The term "owner" is defined in section 2.16 of the Act, which states:

> " 'Owner' means any person having a right of property in a dog or other animal, or who keeps or harbors a dog or other animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog or other domestic animal to remain on or about any premise occupied by him." (Ill. Rev. Stat. 1983, ch. 8, par. 352.16.)

In reaching his conclusion, the trial judge stated that the isolated act of feeding and watering a stray does not make one an owner upon whom liability may be imposed within the meaning of the statute. (See *McEvoy v. Brown* (1958), 17 Ill. App. 2d 470, 479, 150 N.E.2d 652, 656.) The judge further noted that the accident occurred a relatively short time after the animal was transported to the area of Stubblefield's rural home (less than a week), and one half mile from the premises where it was purportedly harbored.

The plaintiffs *pro se* appeal challenges the circuit court's interpretation of the term "owner" as used in the statute as not including either of the defendants.

The Act creates a right of action unlike the common law remedy, and in order to recover under the statute, it is unnecessary to prove negligence, at least as to the owner. (*Bailey v. Bly* (1967), 87 Ill. App. 2d 259, 261-62, 231 N.E.2d 8, 9.) *Village of Northbrook v. Cannon* (1978), 61 Ill. App. 3d 315, 318, 377 N.E.2d 1208, 1210-11, involved interpretation of the definitional provisions of an animal control ordinance which provided:

> " '16.1(p) "Harborer" is any person who provides food and shelter for any domesticated animal on other than a periodic or temporary basis.
>
> 16.1(q) "Owner" is any person having right of property in any animal; who keeps an animal; who has an animal in his care or custody; or who knowingly permits an animal to remain

on or about any premises occupied by him.' "

The term "owner" as used in the Act encompasses both of these definitions, but it does not have language corresponding to the "periodic or temporary basis," as in the ordinance definition of "harborer." Nevertheless, the relative comparability renders the rationale of *Cannon* persuasive:

> "[I]t is apparent that the distinction between an owner and a harborer lies in the degree of active involvement of the person in the animal's care and control. A harborer need only provide food and shelter, whereas an owner either has property rights in an animal, keeps an animal, cares for the animal or knowingly permits it to remain about." (61 Ill. App. 3d 315, 318-19, 377 N.E.2d 1208, 1211.)

In *Cannon*, the defendant's own testimony showed that on two separate occasions, *the dogs in question were safely inside his home at the time he left.* The reviewing court concluded that this testimony, along with reasonable inferences flowing from other evidence, adequately established that the defendant was harboring the dogs and would be liable as such.

The decision of this court in *Heyen v. Willis* (1968), 94 Ill. App. 2d 290, 293, 236 N.E.2d 580, 582, stated:

> "The Animal Act does not define 'keeper' and in the absence of a contrary statutory definition, words used in the statute are used in their common dictionary meaning, *Bowes v. City of Chicago*, 3 Ill. 2d 175, 120 N.E.2d 15; or in their popularly understood meaning (*Bowman v. Armour & Co.*, 17 Ill. 2d 43, 52, 160 N.E.2d 753). Black's Law Dictionary, 4th ed., defines keeper as 'A custodian, manager, or superintendent; one who has the care, custody, or management of any thing or place; one who has or holds possession of anything.' 3 C.J.S., Animals, section 165, states that the owner of an animal is the person who whom it belongs, and its keeper is the one who harbors or protects it. 4 Am. Jur. 2d, Animals, section 92, states, '. . . a person becomes the "keeper" of an animal only when, either with or without the owner's permission, he undertakes to manage, control, or care for it as the owners generally of such animals are accustomed to do.'
>
> The cases we have found which construe or define a keeper of animals do so in terms of management, custody, care or control." (Emphasis added.) See also *Ward v. Ondrejka* (1972), 5 Ill. App. 3d 1068, 1072, 284 N.E.2d 470, 473.

The meaning of the terms "owner" or "keeper" are discussed in

3A C.J.S. *Animals* sec. 205(b), at 709-10 (1973), which states:

"The owner of an animal is the person to whom it belongs, and its keeper is the one who harbors or protects it.

Under the rules governing persons liable for injuries caused by domestic animals, the owner of an animal is the person to whom it belongs.

The keeper of an animal is one who, either with or without the owner's permission, undertakes to manage, control or care for an animal as owners are accustomed to do, or a person who exercises control over the animal on his premises with the knowledge of its presence. A keeper may or may not be its owner; and a man may own an animal and yet not be its keeper. *Whether or not a person is a keeper depends upon the peculiar facts and circumstances of each individual case.*

The word 'keeper' is equivalent to 'the person who harbors.' Harboring means protecting. The words keeping and harboring both necessarily imply an intent to exercise control over an animal and to *provide food and shelter of at least a semi-permanent nature.*

*Under a statute imposing liability on a person having a dog in his possession such word cannot be construed as anything short of the exercise of dominion and control similar to and in substitution for that which ordinarily would be exerted by the owner in possession.* Possessor as used in the statute implies the exercise of care, custody, or control by one who, although not the owner, assumes to act in the owner's stead.

A person who treats a dog as living at his house, *and undertakes to control his actions,* is the owner or keeper within the meaning of the law; but the casual presence of an animal on his premises, if not so treated, does not constitute him such owner or keeper. A person who does not own the dog or the premises on which it is kept is not a harborer or keeper of the dog even though he may have called the dog, given it commands, or let it in or out of the premises." (Emphasis added.) (3A C.J.S. *Animals* sec. 205(b), at 709-10 (1973).)

Under these authorities, we conclude that the evidence presented a question of whether the defendants exercised the requisite degree of custody and control over the dog so as to bring them within the definition of "owner" under the Act.

The question of ownership, as harboring or keeping, is a question for the trier of fact (see *McEvoy v. Brown* (1958), 17 Ill. App. 2d 470, 480, 150 N.E.2d 652, 656; see also *Abraham v. Ibsen* (1919), 213 Ill.

App. 210). Findings of fact made by the trial court will not be set aside unless they are contrary to the manifest weight of the evidence. (*Village of Wilsonville v. SCA Services, Inc.* (1981), 86 Ill. 2d 1, 15, 426 N.E.2d 824, 831; *John J. Calnan Co. v. Talsma Builders, Inc.* (1977), 67 Ill. 2d 213, 218, 367 N.E.2d 695, 698.) Further, as stated in *McEvoy*, although in a different context, it is not the province or function of this court to rewrite statutes by judicial interpretation, but only to interpret the statutes from the words used, giving the words their plain and obvious meaning. (17 Ill. App. 2d 470, 480, 150 N.E.2d 652, 656.) See generally Annot., 21 A.L.R.4th 132, sec. 3 at 136-43 (1983) (keeper or custodian); Annot., 1 A.L.R.4th 994, sec. 5 at 1000-01 (1980) ("owner," "harborer," and the like).

Affirmed.

TRAPP and MORTHLAND, JJ., concur.