JAMES STEINBERG, a Minor, by and through his Parent and Next Friend, Sheila Martinez, Plaintiff-Appellee, v. LAWRENCE PETTA, Defendant-Appellant.

First District (4th Division)   No. 84—2497

Opinion filed December 26, 1985.

504

JIGANTI, P.J., dissenting.

James G. Mavrias, of Brenner, Mavrias, Dorn & Alm, of Chicago, for appellant.

Robert D. Quinlivan, of Quinlivan & Trainor, of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Plaintiff, James Steinberg, a minor, by and through his mother and next friend, Sheila Martinez, brought a two-count action against defendant Lawrence Petta, the absentee landlord of a piece of property located in Blue Island. Plaintiff sought to recover damages for injuries caused by a bite from a dog owned by Petta's tenants, Thomas Groskoph and Carol Welch, alleging that Petta had harbored the dog within the meaning of the Animal Control Act and had been negligent in allowing the dog to be on the premises. The trial court directed a verdict in favor of the defendant on the issue of negligence, but the jury returned a verdict for plaintiff in the amount of $7,508.20 based upon a violation of the Animal Control Act. Defendant appeals, raising the single issue of whether he harbored his tenants' dog within the meaning of the Animal Control Act.

We affirm.

FACTS

Defendant is the owner of a two-story building located in Blue Island, which he has owned since 1953. In 1971, defendant converted the building into a three-unit apartment with a two-car garage connected to both an entrance to the first-floor apartment and to an efficiency apartment. All tenants had access to the backyard of the building. Defendant ceased living on the premises in 1971 and moved three

or four blocks away. In that year, defendant leased the first-floor apartment to Carol Welch pursuant to a lease. Although the lease, on its face, expired in 1972, defendant testified that its terms were in effect in October 1981. The lease provided that pets were not permitted on the premises.

In 1981, defendant employed James Tagler, a Blue Island police officer, to act as the manager of the property. Tagler was imbued with the authority to collect rents from the tenants, which he accomplished by personally visiting the premises, and leasing vacant apartments. Tagler was also responsible for the care of the yard, work done on the premises and repairs to the outside of the building. The outside aspects of the building, including the backyard, were within Tagler's control. In his capacity as manager of the building, Tagler only visited the premises to collect rents, and if he was responding to a complaint. In his capacity as a Blue Island police officer, Tagler passed by the premises.

In early 1981, Tagler rented the utility apartment to Carol Welch. In May or June, 1981, Thomas Groskoph began occupying the first-floor apartment with Carol Welch and her son Donald. There was conflicting evidence presented as to when the dog, described as either an Alaskan husky or a malamute, was first seen on the premises. Tagler testified that he first saw the dog in either June or July, 1981. Gail Barclay, a neighbor, testified that she had seen the dog as a puppy tied with a leash in the backyard of the building beginning in approximately August 1980.

In approximately June 1981, Thomas Groskoph asked for and received permission from Tagler to install a fence around the backyard. A four-foot cyclone fence was constructed, but defendant did not pay for its installation. Gail Barclay testified that on August 13, 1981, a sign was posted on the fence stating "Beware of Dog," although Tagler testified that he could not recall ever seeing the sign. She also testified that the backyard was equipped with a barbecue and lawn furniture and was used by all the tenants of the building.

In July 1981, Tagler received a telephone call from Mrs. Sacardo, a neighbor who lived north of the building, complaining that the dog was barking and leaving a mess in the yard. Approximately one week later, Tagler received a telephone call from Mark Sarisoley, the tenant occupying the second-floor apartment, asking Tagler to speak to the dog's owners because the dog had come near Sarisoley and bothered him when he was taking out the garbage. Subsequent to the call from Mr. Sarisoley, Tagler received a complaint from a neighbor named Peter who lived to the south of the building. Peter registered a com-

plaint similar to that of Mrs. Sacardo regarding the dog's barking and leaving a mess. As a result of the complaint from Mark Sarisoley, Tagler went to the building and spoke to Carol Welch and Thomas Groskoph.

On August 13, 1981, plaintiff James Steinberg, who was 11 years old at the time, was playing football with his two friends, and went into the alley adjacent to defendant's apartment building to retrieve the football. There the three boys encountered Vince Navarro and Scott Grisby standing by the cyclone fence, petting the dog. After speaking to Navarro and Grisby, plaintiff and his friends stood 10 feet from where the dog was, approximately one or two feet away from the fence. The dog, which weighed 65 pounds, moved the distance along the fence toward the plaintiff without making a sound, lunged over the top of the fence and bit the plaintiff's nose. Plaintiff's companion struck the dog and it retreated into the backyard. Plaintiff was taken to the hospital for treatment of the injury to his nose and underwent surgery the following day.

On October 15, 1981, plaintiff filed a two-count complaint which, as amended, alleged that Thomas Groskoph, Carol Welch and Lawrence Petta were liable for the plaintiff's injuries under the provisions of the Animal Control Act and that defendant Petta was negligent for allowing a dog with known vicious tendencies to be on the premises. The plaintiff did not effectuate service upon either Thomas Groskoph or Carol Welch. At the conclusion of plaintiff's evidence, the trial court directed a verdict in favor of defendant Petta on the issue of negligence. The jury returned a verdict for plaintiff in the amount of $7,508.20 based upon the provisions of the Animal Control Act and judgment was entered thereon. On September 12, 1984, the trial court denied both the defendant's motion for judgment notwithstanding the verdict or for a new trial and plaintiff's motion for a new trial solely as to the amount of the damages awarded by the jury. On October 11, 1984, defendant filed a notice of appeal. On October 16, 1984, plaintiff filed a notice of cross-appeal, seeking reversal of the judgment and to have the case remanded for trial solely on the issue of damages. However, in his brief before this court, plaintiff has not pursued the question of a new trial on the issue of damages and that question is waived. 87 Ill. 2d R. 341(e)(7).

OPINION

In order for the plaintiff to recover under section 16 of the Animal Control Act (Ill. Rev. Stat. 1983, ch. 8, par. 366), he is required to prove: (1) an attack by a dog; (2) that the defendant is the "owner"

of the dog; (3) injury to the plaintiff; (4) absence of provocation by the plaintiff; and (5) that the plaintiff was conducting himself peaceably in a place where he had a legal right to be. (*Stehl v. Dose* (1980), 83 Ill. App. 3d 440, 443, 403 N.E.2d 1301, 1303.) The Act's definition of "owner" includes a person who "keeps or harbors a dog ***." (Ill. Rev. Stat. 1983, ch. 8, par. 352.16.) Defendant's sole argument on appeal is that as an absentee landlord, with no actual notice of the presence of the dog on the premises or actual knowledge of the fence which had been installed around the common area of the backyard, he cannot be considered an owner, keeper or harborer of his tenants' dog. We do not agree.

██ █ Although defendant Petta testified that he had no actual knowledge of the presence of the dog on the premises or the installation of the fence until after the dog had attacked plaintiff on August 13, 1981, defendant had hired James Tagler to manage the building on his behalf. Where an agent does an act in the course of his employment, although the principal did not authorize or participate in, or know of the conduct, or even if he forbade the acts or disapproved of them, the rule of *respondeat superior* applies. (*Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 424-25, 412 N.E.2d 447, 454-55.) Tagler was acting within the scope of his employment in allowing the dog to remain on the premises and authorizing the construction of the cyclone fence. His duties included the care of the yard, maintenance of and repairs to the building, collecting of rents from the tenants, and the leasing of vacant apartments. Indeed, plaintiff Steinberg testified that he believed that Tagler was the owner of the building. The trial court instructed the jury, without any objection from the defendant, that "James Tagler was the agent of the defendant Lawrence Petta at and before the time of this occurrence" and "[t]herefore, any act or omission of the agent at that time was in law the act or omission of the defendant Lawrence Petta." Defendant's status as an absentee landlord cannot insulate him from liability. If the conduct of defendant's agent Tagler amounted to keeping or harboring of the dog, such conduct is attributable to defendant.

██ Harboring a dog has been defined as "to afford lodging, to shelter or to give refuge to a dog." (*Gilbert v. Christiansen* (Minn. 1977), 259 N.W.2d 896, 897; *Verrett v. Silver* (1976), 309 Minn. 275, 277-78, 244 N.W.2d 147, 149.) Harboring means protecting, and one who treats a dog as living at his house, and undertakes to control his actions, is the owner or keeper within the meaning of the law. (*Thompson v. Dawson* (1985), 136 Ill. App. 3d 695, 699, 483 N.E.2d 1072, 1075; *Miller v. Reeves* (1918), 101 Wash. 642, 645, 172 P. 815,

816; cf. Village of Northbrook v. Cannon (1978), 61 Ill. App. 3d 315, 318, 377 N.E.2d 1208, 1211.) The question of whether or not a person is a keeper or harborer of a dog depends upon the peculiar facts and circumstances of each individual case. Thompson v. Dawson (1985), 136 Ill. App. 3d 695, 699, 483 N.E.2d 1072, 1075.

■ Initially, we note that the question of whether defendant, acting through his manager and agent Tagler, harbored the dog belonging to Welch and Groskoph is a fact question and one which was properly submitted to the trier of fact for resolution. Reasonable persons could differ as to whether allowing the dog to roam freely in the common area of the backyard and allowing a cyclone fence to be installed around that area constituted harboring of the animal. (See Stehl v. Dose (1980), 83 Ill. App. 3d 440, 443, 403 N.E.2d 1301, 1303.) While the majority of the material facts was undisputed, some of the facts in evidence, with the reasonable inferences to be drawn therefrom, were in controversy and were properly submitted to the jury. McEvoy v. Brown (1958), 17 Ill. App. 2d 470, 480, 150 N.E.2d 652, 656; Abraham v. Ibsen (1919), 213 Ill. App. 210, 219.

■ A court of review is empowered to reverse a jury verdict only if it was against the manifest weight of the evidence. (Spankroy v. Alesky (1977), 45 Ill. App. 3d 432, 439, 359 N.E.2d 1078, 1083.) A verdict is said to be against the manifest weight of the evidence where it is palpably erroneous and wholly unwarranted (Frankenthal v. Grand Trunk Western R.R. Co. (1983), 120 Ill. App. 3d 409, 415, 458 N.E.2d 530, 536), is clearly the result of passion or prejudice (Ogg v. City of Springfield (1984), 121 Ill. App. 3d 25, 42, 458 N.E.2d 1331, 1342), or appears to be arbitrary, unreasonable, and not based upon the evidence (Martin v. Zucker (1985), 133 Ill. App. 3d 982, 990-91, 479 N.E.2d 1000, 1006; Gabrenas v. R.D. Werner Co. (1983), 116 Ill. App. 3d 276, 285, 451 N.E.2d 1307, 1312-13). A verdict "cannot be set aside merely because the jury could have drawn different inferences and conclusions from conflicting testimony or because the reviewing court would have reached a different conclusion if it had been the trier of fact." (Turner v. Chicago Transit Authority (1984), 122 Ill. App. 3d 419, 425, 461 N.E.2d 551, 555.) When considering whether a verdict was contrary to the manifest weight of the evidence, a reviewing court must view the evidence in the light most favorable to the appellee (here, James Steinberg). Ford v. City of Chicago (1985), 132 Ill. App. 3d 408, 412, 476 N.E.2d 1232, 1236; Kemper v. McDougal-Hartmann Co. (1984), 127 Ill. App. 3d 512, 515, 468 N.E.2d 998, 1000.

■ Based on our review of the record, we cannot say that the ju-

ry's verdict was against the manifest weight of the evidence. The evidence, viewed in the light most favorable to the plaintiff, establishes that the defendant, through his agent Tagler, was aware of the dog's presence on the premises and authorized Groskoph to erect the four-foot cyclone fence surrounding the backyard. The backyard remained in defendant's control and was used by all tenants of the building. The fence was installed without any cost to defendant and was the only improvement to the premises not paid for by the defendant. The jury may have believed Barclay's testimony that a "Beware of Dog" sign was posted on the fence. This case presents more than a situation where the owner of a building merely acquiesces in the presence of an animal on his property. Based on the facts in evidence, and the reasonable inferences to be drawn therefrom, the jury could have concluded that the defendant received the benefit of increased and constant security for his building from both the fence and the dog. The defendant, through his agent, retained control over the backyard, and by speaking to the dog's owners regarding complaints, attempted to exercise some control over the dog's use of the enclosed area defendant provided. We believe that the evidence produced at trial was sufficient to support the jury's conclusion that the defendant harbored his tenants' dog within the meaning of the Animal Control Act.

Finally, defendant relies upon three decisions from other jurisdictions to support his position that an absentee landlord cannot harbor his tenants' dog. (*Gilbert v. Christiansen* (Minn. 1977), 259 N.W.2d 896; *Hagenau v. Millard* (1923), 182 Wis. 544, 195 N.W. 718; *Zwinge v. Love* (Sup. Ct. 1971), 37 App. Div. 2d 874, 325 N.Y.S.2d 107.) While these decisions are not binding upon this court (*Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 605, 480 N.E.2d 1176, 1178), we find that each is distinguishable upon its own particular facts. In *Gilbert v. Christiansen* (Minn. 1977), 259 N.W.2d 896, the court held that a defendant's mere status as the apartment building manager was not sufficient to render it a harborer of the dog. The court rejected plaintiff's argument that the apartment building manager's rules and regulations for lessees pertaining to pets gave the apartment building manager control over the animal, since the rules were not applicable within a tenant's apartment. The court also held that neither the right to exclude pets from the property nor the benefit of a $10 rental surcharge for pet owners was sufficient to render the manager the harborer of the dog. In the instant case, however, the jury could have found that defendant not only gave his tenants permission to keep the dog on the premises but also received a direct economic benefit from the increased security provided by the dog, the cyclone fence sur-

rounding the backyard and the sign posted on the fence warning people of the dog's presence, and that these benefits prompted defendant to waive his right under the lease to exclude the pet from the premises.

In *Hagenau v. Millard* (1923), 182 Wis. 544, 195 N.W.2d 718, the Wisconsin Supreme Court reversed a jury verdict which found that defendants had harbored their tenant's dogs. The evidence established that the tenant brought her dogs into the defendants' restaurant (located in the apartment building) where the dogs received bones from patrons and neighbors, that the defendants were fond of the dogs and occasionally petted them and took them for rides. The court concluded that this evidence did not establish that the defendants had exercised control over the dogs such as would render them liable as owners. The *Hagenau* case is factually distinguishable from the instant case. Finally, in *Zwinge v. Love* (Sup. Ct. 1971), 37 App. Div. 2d 874, 325 N.Y.S.2d 107, defendant was visiting her son's residence and called to her son's dog, gave it commands and let it out of her son's house. The court held that defendant was not the harborer of the dog and, in *dicta*, stated that the liability of an owner, harborer or keeper of a dog has not been extended to a landlord who merely leases the realty to the owner of a dog. The *Zwinge* court's gratuitous statement is no longer the law in New York (*Strunk v. Zoltanski* (1984), 62 N.Y.2d 572, 468 N.E.2d 13) and has never been the law in Illinois. *Edelstein v. Costelli* (1967), 85 Ill. App. 2d 81, 229 N.E.2d 557 (abstract of opinion).

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

LINN, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

The only issue before the court is whether Lawrence Petta, the defendant, is responsible to James Steinberg under the provisions of the Animal Control Act (Act) (Ill. Rev. Stat. 1983, ch. 8, par. 351 *et seq.*). Section 16 of that Act provides:

> "If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained." (Ill. Rev. Stat. 1983, ch. 8, par. 366.)

The term "owner" is defined in section 2.16 of the Act which states:

"'Owner' means any person having a right of property in a dog or other animal, or who keeps or harbors a dog or other animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog or other domestic animal to remain on or about any premise occupied by him."

The majority of this court supports the judgment against Petta on the basis that Petta "harbors" the dog. I respectfully dissent.

Despite protestations of the majority to the contrary, a fair reading of the evidence proves that Petta, through his agent, merely acquiesced in permitting a tenant to have a dog on the premise. It appears patent from a reading of the Act that the intention of the legislature is to make a person strictly liable if he has control over an animal that injures a person. Petta knew through his agent, that there was a dog on his property, but there is no fair inference from this evidence to show that Petta in any way controlled the animal and is therefore responsible for the dog's conduct. It is an unwarranted extension of the strict liability statute to hold a person responsible when the person had no control over the animal.

The majority holding today says to landlords—beware of dog. This interpretation of the Act will have the effect of causing more landlords to forbid the keeping of pets. The owner of the dog was responsible for its conduct in the present case, not the landlord.