Lewis Heyen, Administrator of the Estate of Dennis Lee Wethington, Deceased, Plaintiff-Appellant, v. Raymond Willis, et al., Defendants. Raymond Willis and Wilda Willis, Defendants-Appellees.

Gen. No. 10,914.

Fourth District.

April 29, 1968.

 

Samuel S. Blane, of Petersburg, and Stuart Dobbs, Denby & Dobbs, of Carlinville, for appellant.

R. G. Heckenkamp and W. J. Simhauser, of Springfield, for appellees.

JONES, J.

This appeal presents the question of the liability of a landowner for injury and damage caused by cattle which have strayed from land under lease or license to the owner and keeper of the cattle. Plaintiff-administrator brought an action for wrongful death, property damage and funeral expenses charging the landowner with (1) being an "owner or keeper" within the purview of section 1 of the Animal Act, Ill Rev Stats 1965, c 8, and (2) negligence in leasing land for pasture purposes when the fences were insufficient to contain cattle. The owner and keeper of the cattle was joined as a defendant in a separate count for wrongful death for a violation of the Animal Act and his liability is not questioned in this appeal. The circuit court granted defendant landowner's motion for summary judgment from which plaintiff appeals.

The pertinent facts presented by the pleadings, affidavits and depositions show that decedent, Dennis Lee Wethington, died of injuries received when the car he was driving went out of control and overturned as he was attempting to avoid cattle astray upon the highway. The cattle were the sole property and in the sole care of defendant Lyons. They escaped from a pasture owned by the defendants Willis and placed in possession of

Lyons under a lease or license. The pasture fences were inadequate to restrain cattle but by the terms of the agreement for possession were to be repaired by Lyons. Neither Mr. nor Mrs. Willis ever made an inspection of the entire fence before or after placing Lyons in possession and neither inspected the repairs made. For the purpose of this appeal we must assume that after the repairs were made by Lyons the fence remained inadequate to restrain cattle. The landowners owned no interest in the cattle and had no responsibility for their care or maintenance.

Plaintiff contends that his amended complaint contains sufficient allegations to show a legal duty owed by the defendant-landowners to his decedent and that he should be permitted to submit the facts to a jury for a determination of whether there has been a negligent breach of that duty.

Illinois Revised Statutes, chapter 8, section 1, AN ACT in relation to domestic animals running at large within the State of Illinois, provides:

> "Hereafter, it shall be unlawful for any animal of the species of horse, ass, mule, cattle, sheep, goat, swine or geese, to run at large in the State of Illinois: Provided, that no owner or keeper of such animals shall be liable for damages in any civil suit for injury to the person or property of another caused by the running at large thereof, without the knowledge of such owner or keeper, when such owner or keeper can establish that he used reasonable care in restraining such animals from so running at large."

Plaintiff reasons that since the landowners knew the pasture was to be used for grazing cattle and had the right to require the fences to be built and maintained with reasonable care, it is for a jury to determine whether or not they are a "keeper" within the statute.

As authority for his position plaintiff cites Stevens v. People, 67 Ill 587, and an annotation on "keeper," 15 ALR 1202, et seq. However, these authorities are concerned with the definition of "keeper" within the scope of gaming and criminal violations and we deem them not apt.

■ The Animal Act does not define "keeper" and in the absence of a contrary statutory definition, words used in the statute are used in their common dictionary meaning, Bowes v. City of Chicago, 3 Ill2d 175, 120 NE2d 15; or in their popularly understood meaning (Bowman v. Armour & Co., 17 Ill2d 43, 52, 160 NE2d 753). Black's Law Dictionary, 4th ed, defines keeper as "A custodian, manager, or superintendent; one who has the care, custody, or management of any thing or place; one who has or holds possession of anything." 3 CJS, Animals, § 165, states that the owner of an animal is the person to whom it belongs, and its keeper is the one who harbors or protects it. 4 Am Jur2d, Animals, § 92, states, ". . . a person becomes the 'keeper' of an animal only when, either with or without the owner's permission, he undertakes to manage, control, or care for it as the owners generally of such animals are accustomed to do."

The cases we have found which construe or define a keeper of animals do so in terms of management, custody, care or control. Blakley v. Glass, 342 Ill App 90, 95 NE2d 128, (1950) is similar in its facts to this case. There the plaintiff sued defendant landowner Glass for personal injuries and property damage arising out of a collision between plaintiff's automobile and a horse that had escaped from defendant's pasture. The horse was purchased by another defendant (Hopkins) and given to his 13-year-old daughter, Jane. The defendant Glass's daughter, Barbara, was a friend of Jane's and on the day in question Jane rode the horse to the Glass place and put him in the pasture with Barbara's horse, from which pasture he escaped to the highway, apparently

293

through a broken fence. Plaintiff filed a complaint charging general and specific negligence but at the trial and in his brief and argument before the appellate court relied upon section 1 of the Animal Act. The trial court directed a verdict for the defendant landowner and the appellate court affirmed holding there was no liability under the statute, stating, "There is nothing to show that Glass in any way controlled the keeping of the horse. No act of negligence on his part is shown. . . . Further, it is our opinion that Glass was not the keeper of the horse, as that term is used in the statute in question. Something more than the fact that the defendant Jane Hopkins visited her friend Barbara Glass and placed her horse in the Glass pasture is required to fix the responsibility of a keeper on Glass. Hancock v. Finch, 126 Conn 121, 9 A2d 811 (1939); Raymond v. Bujold, 89 NH 380, 199 A 91 (1938)."

The Wisconsin case of Reuter v. Swarthout, 182 Wis 453, 196 NW 847, involved a statute placing liability upon an owner or keeper for damage caused by any described animal suffered to run at large. A landowner had leased his farm and stock, including a bull in question, to a tenant, who with the owner's knowledge allowed the bull to run at large with the result that the bull damaged property in another's field. The court held that the owner of the bull was not the keeper thereof, saying at page 456:

". . . defendant had rented his place and stock, including the bull, to a renter who had exclusive possession and control of the same under his lease. Under these facts there can be no doubt but that the renter was the 'keeper' of the bull. It will be noted that the statute fixes the liability on the owner *or* keeper who shall suffer the proscribed animal to run at large, and not upon the owner *and* keeper of the animal. . . . The tenant permitted the bull to run at large. The owner did not do so, as

he did not have control of the animal. . . . The statute should not be extended beyond its reasonable scope to punish one who is not in control of the animal."

■ To be a keeper of animals as that term is used in the statute requires more than the passive ownership of grazing lands. In this case the landowners owned no interest in the cattle, were not responsible for their care and had no right to their custody or control and accordingly, cannot be held to be a "keeper" within the meaning of the Animal Act. To hold otherwise would ascribe a meaning to a plainly worded statute other than that intended by the Legislature.

Liability under the Animal Act aside, plaintiff asserts that in leasing premises to an owner or keeper of animals, lessors have a common-law duty to guard against injury or damage to strangers to the lease caused by estrays which escape from the premises as a result of a known defect on the premises at the time of the lease, and that a jury question exists on the issue of whether there has been a negligent breach of that duty. Lacking express case authority for this rule, plaintiff seeks to give it credence by drawing analogies to well established tort rules. We grant that plaintiff's cases are good authority in the areas of their decision, yet we consider that they fail to show a common-law duty upon the part of the defendant-landowners in this case. To the contrary are the cases in which the alleged landowner's duty has been placed in issue. Blakley v. Glass, supra, Reuter v. Swarthout, supra.

■ ■ Plaintiff urges that because of changing social conditions a farmer today does have a duty to fence in livestock and calls upon the court to overrule the "early common-law cases" that may stand as an impediment to liability in this case. But this request has been met, for the early Illinois common-law cases have been set aside and the duty to fence in livestock has been

established. Prior to the enactment of the Animal Act there was no liability in Illinois for injury or damage caused by an animal running at large. The burden was placed on the landowner to fence his land against the depredation of animals. However, because of changing social conditions as assigned by plaintiff, that law was changed by the legislature when they first adopted the Animal Act in 1871. But in making a change, they limited the liability for damage by estrays to their owner or keeper. Bulpit v. Matthews, 145 Ill 345, 34 NE 525, and McKee v. Trisler, 311 Ill 536, 143 NE 69, discuss the common law and the changing conditions leading to adoption of the Animal Act.

██ ██ Plaintiff finally asks this court to lay aside any hypothetical or real obstacle caused by considering this case as a livestock at large problem asserting that the case resolves itself around the duty of the owner of leased premises to strangers to the lease. He states that such duty does exist where premises are leased with a known defective condition or where the owner agrees to repair, as in the cases of Marcovitz v. Hergenrether, 302 Ill 162, 134 NE 85, and Wagner v. Kepler, 411 Ill 368, 104 NE 231. There is no question that this is the law of Illinois as represented by these and many other cases. However, we cannot, as plaintiff suggests, lay aside any consideration that this case is a livestock at large problem for plainly it is a livestock at large problem and cannot be considered as anything else. The likelihood of injury or damage from estrays, and the attendant duty to use care to prevent such injury or damage, lies not in the place where animals may be kept but in their propensity to roam, their wanderlust. Thus, the duty to guard against injury or damage by estrays is cast by law upon the owner or keeper of the animals, and liability for injury or damage caused by them must be predicated upon the Animal Act. No common-law duty exists upon the part of the landowners in this case and the question

of their negligence in placing their premises in the possession of Lyons for the grazing of cattle should not be submitted to a jury.

The circuit court correctly entered a summary judgment in favor of defendant-landowners and that judgment should be affirmed.

Affirmed.

SMITH, P. J. and TRAPP, J., concur.