James H. ROYER, Defendant-Appellant,

v.

Kathy PRYOR, as next friend of Crystal Pryor, Plaintiffs-Appellees.

No. 1–481A126.

Court of Appeals of Indiana, First District.

Nov. 16, 1981.

---

James R. Cotner, Cotner, Mann & Chapman, Bloomington, Evan E. Steger, Robert G. Zeigler, Ice, Miller, Donadio & Ryan, Indianapolis, for defendant-appellant.

Gary J. Clendening, Joseph D. O'Connor, III, Bunger, Harrell & Robertson, Bloomington, for plaintiffs-appellees.

## STATEMENT OF THE CASE

RATLIFF, Judge.

James H. Royer appeals from the trial court's judgment entered upon verdicts in favor of Kathy Pryor in the amount of $4,750.00 and in favor of Crystal Pryor in the amount of $57,000.00 for injuries suffered as a result of Royer's negligence in permitting his tenants, Gary and Judy Srygler, to keep a vicious dog on leased premises. We reverse.

## FACTS

Royer is the owner of a duplex at 126–128 Pinewood Drive, Bloomington, Indiana, the western half of which (128 Pinewood) he rented to the Sryglers. While Judy Srygler was living in Florida apart from Gary, she obtained a German shepherd, Keno, for protection. While they were still in Florida Keno had warded off an attacker of Judy, and there was also testimony that Keno had bitten a babysitter of the Srygler's son, Jimmy, upon provocation. None of this information was ever made known to Royer prior to the trial.

When the Sryglers met Royer to sign the lease on June 26, 1977, in Bloomington, Keno was present and began barking when Royer knocked on the door. Jimmy took Keno to a back bedroom where he was confined during the meeting of the parties. The lease form provided by Royer contained a provision forbidding animals on the premises, but this provision was lined out upon express agreement of the parties. The one year lease agreement contained no description of the leased premises whatsoever. The lease did, however, provide that the lessee should not make any changes to the interior of the structure; that utilities were to be furnished by the lessee; and that the lessor reserved the right to enter the premises "at any reasonable time to inspect the same and to do so upon prior notice for the purpose of showing the premises to prospective Lessees." Record at 258. Royer testified that he had hired a neighborhood girl to mow the front yard between the duplex and the street at the time the Sryglers moved in, but that since the fall of 1978 the tenants had cared for the lawn themselves.

Keno was permitted to run free in the neighborhood so long as the Sryglers or their son were with him, and on two occasions he exhibited aggressive behavior toward a UPS delivery man and a neighbor's son. None of this was communicated to Royer. However, the lessee of the other half of Royer's double, Mrs. Fleetwood, who stated that she was afraid of all big dogs, told Royer that she was afraid of Keno. On October 17, 1977, Keno severely injured the brother of another neighbor, Richard Luallen, who was a friend of the Sryglers and who initiated the interaction with Keno. The testimonies of Gary Srygler, Rick Luallen, and Kathy Pryor reflect three different versions concerning what happened at that time to precipitate the attack. Royer was not informed of this incident either.

In January 1978 a neighbor complained to the Bloomington Animal Control Commission about Keno's running free in the neighborhood, and the Commission notified the Sryglers that the dog must be restrained. Gary requested permission from Royer to build a fence around his part of the back yard because of the notification by the Commission that he must restrain Keno and because he did not want to chain him. Royer vacillated.

On February 24, 1978, Jimmy Srygler attached Keno by a twenty foot chain to the door handle of a disabled Volkswagen parked in the Srygler driveway. Crystal Pryor, age six, who had frequently played with Keno without incident, was returning home from a neighbor's house when she cut through the Sryglers' front yard. Her encounter with Keno resulted in multiple facial lacerations and permanent scars. Blood

on the snow revealed that the incident occurred about three feet from the car.

Crystal and her mother, Kathy Pryor, brought the current action against the Sryglers in April 1978. Royer was added as a party defendant in December 1979. After a three day trial beginning on November 12, 1980, the cause was submitted to the jury at 12:40 p. m. on November 14, 1980. The jury returned verdicts against all defendants at 10:00 p. m. that same date. The court entered judgment upon those verdicts at that time. Only Royer appeals therefrom.

### ISSUES

Royer raises the following issues for our review:

"1. Are the verdicts below supported by sufficient evidence to prove the proposition, essential to recovery by plaintiffs, that the defendant Royer had actual knowledge of the vicious or dangerous propensities of his tenants' dog before it bit plaintiff?

2. Are the verdicts below supported by sufficient evidence to prove the proposition, essential to recovery by plaintiffs, that defendant Royer exercised or retained control over his tenants' front yard or driveway where plaintiff was bitten?

3. Are the verdicts below supported by sufficient evidence to prove the proposition, essential to recovery by plaintiffs, that at the time of the incident litigated defendant Royer knew of the presence of his tenants' dog in an area over which he exercised or retained control?

4. Do Indiana Courts hold that a landowner, who is neither the owner nor the keeper of an animal, has any duty to confine or restrain such animal?

5. Were the verdicts below contrary to law because they wrongfully imposed a responsibility on a landowner for the acts of his tenants' animal, when Indiana law assigns such responsibility to the owner or keeper of such animal?"

### DISCUSSION AND DECISION

In order that review of this case may be conducted from a proper perspective, certain appellate principles must be kept in mind. First, in determining whether a judgment is contrary to law or whether there is sufficient evidence to support a verdict, this court will neither weigh the evidence presented below nor judge the credibility of witnesses. *Brand v. Monumental Life Insurance Co.* (1981) Ind., 417 N.E.2d 297; *Monumental Life Insurance Co. v. Hakey* (1976) 171 Ind.App. 56, 354 N.E.2d 333, *trans. denied* (1977). Second, we shall view all the evidence from a point of view most favorable to the verdict and judgment entered thereon, and we must affirm if the verdict is supported by substantial evidence of probative value to establish each material element of the claim. *Weenig v. Wood* (1976) 169 Ind.App. 413, 349 N.E.2d 235, *trans. denied. Accord, Fleetwood v. Mirich* (1980) Ind.App., 404 N.E.2d 38; *State v. Thompson* (1979) Ind. App., 385 N.E.2d 198, *trans. denied.* Third, in the absence of timely objections, the trial court's instructions as read to the jury, even if erroneous, become the law of the case. *Board of Commissioners of Monroe County, Indiana v. Hatton* (1981) Ind.App., 427 N.E. 2d 696. *State v. Hall* (1981) Ind.App., 415 N.E.2d 89 (transfer pending); *DDR Computer Service Bureau, Inc. v. Davis* (1980) Ind.App., 411 N.E.2d 722, *trans. denied.* "The instruction of the court being the law of the case, it follows that if the verdict was not in conformity with the instruction, it is contrary to law." *Kundred v. Bitler* (1931) 93 Ind.App. 691, 698, 177 N.E. 345, *trans. denied* (1932).

In issues one, two, and three appellant Royer contends that the verdicts rendered against him were contrary to law because they did not conform to the trial court's instructions numbered three and eleven:

"COURT'S FINAL INSTRUCTION NO. 3

In this case, the plaintiffs have the burden of proving the following propositions by a preponderance of the evidence before they can recover from the defendants [sic] James H. Royer, Jr.:

First, that Mr. Royer was the owner of the premises occupied by the defendants Srygler;

Second, that Mr. Royer exercised or retained control over a portion of the premises occupied or used by the defendants Srygler;

Third, that Mr. Royer knew the Sryglers were keeping a dog with vicious or dangerous propensities in the area over which he exercised or retained control;

Fourth, that Mr. Royer knew or in the exercise of reasonable care should have known that children the age of Crystal Pryor could come into contact with the dog in the area over which he exercised or retained control;

Fifth, that Mr. Royer was negligent in that he did not require the Sryglers to remove the dog from the area over which he exercised or retained control;

Sixth, that Crystal Pryor was bitten and injured by the dog in the area over which Mr. Royer exercised or retained control; and

Seventh, that Mr. Royer's negligence was a proximate cause of Crystal Pryor's injuries.

If you find that the plaintiffs have proven each of these propositions by a preponderance of the evidence, then you should return a verdict for the plaintiffs and against the defendant James H. Royer. However, if you find that the plaintiffs have failed to prove any one or more of these propositions by a preponderance of the evidence, then your verdict should be for the defendant, James H. Royer, and against the plaintiffs."

## "COURT'S FINAL INSTRUCTION NO. 11

Generally, a landlord is not liable to his tenants or to other persons coming into the rental premises for injury caused by a dangerous condition which comes into existence after his tenants have taken possession of the premises.

To this general rule, however, are certain exceptions.

A landlord exercises or retains control (1) over any portion of the premises and [sic] to the extent that he may expressly reserve by the terms of the rental agreement, or (2) over any portion of the premises used in common by two or more different tenants.

A landlord thus exercising or retaining control over a portion of the premises has a duty to all persons legally upon the premises to exercise reasonable care to maintain in a safe condition that portion of the premises over which he exercises or maintains control.

If the landlord knows of a dangerous condition in that portion of the premises and fails to take reasonable action within a reasonable time to correct it, he is liable to one injured as a proximate result of his negligence.

It is for you to determine, from a consideration of all the evidence in the case, whether the plaintiffs have proven by a preponderance of the evidence that the defendant James Royer exercised or retained control over that portion of the premises where Crystal Pryor was bitten and injured."

Royer notes that the court instructed the jurors that the Pryors must prove each of the seven elements in instruction number three before they could return a verdict against him. Specifically, Royer argues that there was no evidence or no reasonable inference from any evidence in the record to support a finding (1) that Royer either retained or exercised control over a portion of the premises occupied by the Sryglers, (2) that Royer knew of Keno's dangerous or vicious propensities before Keno bit Crystal, or (3) that Royer knew of Keno's presence in an area over which he exercised or retained control. Because we agree with Royer that there is no evidence or any reasonable inference from all the evidence which shows that Royer *knew* of Keno's dangerous or vicious propensities prior to the incident involving Crystal Pryor or that Royer retained control over the part of the premises upon which Keno was restrained, we must reverse.

The Pryors argue that even though the evidence on the issue of knowledge is conflicting and circumstantial in nature, when viewed in a light most favorable to the verdict the evidence will support a reasonable inference that Royer knew of Keno's vicious propensities. The Pryors point to the fact that Keno barked when Royer came to the Srygler residence to execute the lease and was taken to a back room where he remained during the meeting of the parties. They note also that Mrs. Fleetwood told Royer she was afraid of Keno and that Luallen testified he believed Royer himself to be afraid to approach Sryglers' property because of the dog. Finally, they contend that Gary Srygler's call to Royer concerning the necessity of restraining Keno should have put Royer on notice of Keno's dangerous propensities. We disagree that any of these facts taken separately or in concert are adequate in and of themselves to support a reasonable inference that Royer actually knew Keno possessed vicious or dangerous propensities.

■ At common law all dogs, regardless of breed or size, are presumed to be harmless, domestic animals. *Eason v. Miller* (1980) 153 Ga.App. 420, 265 S.E.2d 340; *Andrews v. Jordan Marsh Co.* (1933) 283 Mass. 158, 186 N.E. 71. Absent a statute to the contrary the common law presumption must prevail. To overcome the presumption that a domestic, as opposed to a wild, animal is harmless, one must point to a known vicious or dangerous propensity of the animal in question. A dangerous or vicious propensity has been defined in Indiana as "a propensity or tendency of an animal to do any act which might endanger the safety of person or property in a given situation. It is the act of the animal and not in the state of mind of the animal from which the effects of a dangerous propensity must be determined." *Doe v. Barnett* (1969) 145 Ind.App. 542, 251 N.E.2d 688, 694, *trans. denied* (1970). *See also,* 3A C.J.S. *Animals* § 180 (1973). It is not, therefore, reasonable to attribute vicious propensities to a dog merely because he

barks at strangers, because a person is afraid of the dog, or because a city ordinance requires a dog to be restrained at all times. These are not acts by the dog which might endanger persons or property, and knowledge of such facts could not possibly support an inference of actual knowledge of the dog's vicious propensities. In phrasing point three of its instruction number three, the court was careful to use only the word "knew," as opposed to the phrase "knew or in the exercise of reasonable care should have known," which it used in setting out the fourth element of the instruction. We believe that such use of the word "knew" carries the import of actual, as opposed to constructive, knowledge. Thus, the fact that Royer might have been afraid of Keno or the fact that a neighbor who was fearful of all large dogs told Royer she was afraid of Keno or the fact that Royer knew the Animal Control Commission required the Sryglers to pen or chain Keno cannot support a reasonable inference that Royer actually knew Keno to have a propensity to commit an act which would endanger persons or property.

■ Likewise, we agree with Royer that there is no evidence or no reasonable inference from evidence in the record to support a finding under the instructions that Royer either retained or exercised control over the portion of the premises on which the incident occurred. Pryors argue that because Royer hired a girl to mow the yard of the duplex from time to time prior to the fall of 1978 and because Gary Srygler called Royer to request permission to build a fence in the back yard, the jury could reasonably infer that Royer retained control over the yard where Keno was chained. We do not agree.

■ The court correctly instructed the jury in final instruction number eleven that a landlord such as Royer is generally not liable to persons who suffer injury on his rental property caused by a dangerous condition coming into existence after tenants have taken possession of the premises.[1]

---

1. We note that the verdict and judgment in this cause were rendered on November 14, 1980.

At that time *Blake v. Dunn Farms, Inc.* (1979) Ind.App., 396 N.E.2d 415, *on rehearing* 399

**1118**

The rationale supporting this general proposition is based on the concept of a lease as a conveyance of the landlord's possessory interest in that real estate for a term of years. A landowner would be deemed a trespasser were he to enter upon the real estate or to intermeddle with the use thereof unless he had expressly reserved those rights under the lease. Thus the court instructed the jury further on two exceptions to the general rule of a landlord's lack of liability for changed conditions coming into existence on the real estate after tenants have taken possession of the property: Royer could be deemed to retain control over a portion of the Sryglers' premises either (1) if expressly so provided by the terms of the lease or (2) impliedly if a portion of the premises were used in common by two or more of the tenants. In examining the first exception it is important to note that although the lease agreement did not specifically describe the property demised, it is also silent as to Royer's retaining control over any portion of the premises. The lease did provide that Royer could enter the

premises at reasonable times to inspect the premises, presumably for evidence of waste since structural changes were expressly prohibited by the lease, or to show the property to a prospective lessee. However, because the lease did not prohibit pets, Royer would have had no legal right under the lease agreement to enter upon the property for the purpose of inspecting for pets, nor could he as the landowner terminate the lease because pets were being kept on the premises. With respect to the second exception, again there was no evidence which would support a reasonable inference that the area in which Keno was chained was used or regarded by any of the tenants as a common area. In fact, the uncontroverted testimony was that each of the tenants of Royer's duplex considered the yard as a severable and recognizable area which each used for his or her own purposes. The fact that there were no sidewalks in the neighborhood and that the neighbors all cut through each others' yards or gathered together on each others' yards does not give rise to an inference that the tenants at 126

N.E.2d 431 (1980), was the law in Indiana with respect to a landowner's liability for injuries caused by a tenant or sub-tenant's animal. In that case the plaintiff was a passenger in an automobile which struck a horse owned by Love at night on a portion of highway running through farm land owned by Dunn Farms. The complaint alleged negligence by both Dunn Farms and Love in permitting the fences to fall into disrepair and in permitting a horse to run on the state right-of-way and highway. Dunn Farms rented the property on both sides of the highway to McConnell who permitted Love to keep his horses in the west pasture in exchange for services. The trial court entered summary judgment in favor of the landowner, but the court of appeals reversed. On December 5, 1980, the Indiana Supreme Court granted transfer, vacated the opinions by the court of appeals, and affirmed the trial court's grant of summary judgment in favor of Dunn Farms. In writing for our supreme court Justice Pivarnik stated at 413 N.E.2d at 563:

"Thus, it is the duty of the owner and the keeper of the animal to keep him confined, and the mere possession or ownership of land from which an animal strays is not sufficient to make the landowner liable, so long as the landowner is not the keeper of such animal. This is and has always been the law in Indiana. *See Cook v. Morea* (1870) 33 Ind. 497. If the landowner is neither the owner

nor keeper, he has no duty to confine or restrain the animal. If an animal is allowed by its keeper to escape from its confinement and harm results, that damage results from the negligent confinement, not the condition of the land. To the extent that the condition of the land made it inadequate or unsuitable for confinement, the responsibility for selecting an adequate method of confinement is upon the keeper, not upon the landowner who neither owned nor kept the animal. *See Grigg v. Southern Pacific Co.* (9th Cir. 1957) 246 F.2d 613, *reh. denied*, 248 F.2d 949; *Heyen v. Willis* (1968) 94 Ill.App.2d 290, 236 N.E.2d 580. *See generally* 59 A.L.R.2d 1328, 1341, 1343; 4 Am.Jur.2d *Animals*, § 92." He stated further that the knowledge by Dunn Farms' officers that domestic animals were present in the fields created no duty on their part to be concerned that the horses might escape and cause injury or that they represented a dangerous condition on the land. From this we are led to infer that the presence of domestic animals in a place where they have a right to be, especially in the absence of any actual knowledge of their vicious nature, does not give rise to a duty on the part of a landowner to take action to prevent a possible injury by the animal. Without the duty in such a case a mere landowner could not possibly be liable on a theory of negligence.

and 128 Pinewood used or regarded the area in which Keno was chained as one in which they held a common interest.

Because there is no evidence in the record which would support a reasonable inference that Royer actually knew of Keno's vicious propensities or that Royer retained control over that part of the premises where Keno was restrained at the time of the incident the verdict and judgment thereon with respect to Royer must be reversed as contrary to the instructions constituting the law of this case.

Judgment reversed.

NEAL, P. J. and ROBERTSON, J., concur.