DANIEL DOUGLASS, Plaintiff-Appellant, v. MICHAEL DOLAN *et al.*, Defendants (Barbara Peterson *et al.*, Defendants-Appellees; Edward J. Domalik, Intervening Plaintiff and Separate Appellant; Daniel Douglass *et al.*, Defendants; Barbara Peterson, Responding Defendant-Appellee).

Second District    No. 2—96—0076

Opinion filed January 17, 1997.

Thomas J. Popovich, of Law Offices of Patrick A. Salvi, P.C., of Waukegan, for appellant Daniel Douglass.

Kelly A. Cahill, of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellant Edward J. Domalik.

Russell W. Hartigan, James P. Pelafas, and Patrick H. O'Connor, all of Russell W. Hartigan & Associates, of Chicago, for appellee Barbara Peterson.

George W. Brannen, of Casey & Brannen, of St. Charles, for appellees Karen Durnan and Thomas Durnan.

JUSTICE BOWMAN delivered the opinion of the court:

Pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), plaintiff Daniel Douglass and plaintiff-intervenor Edward J. Domalik appeal the trial court's order granting the separate summary judgment motions of defendants Barbara Peterson and Thomas and Karen Durnan (the Durnans). We affirm.

On May 5, 1993, Douglass was injured when "Lady," a horse which had escaped from her pasture and was running at large, collided with his motorcycle. Douglass filed a complaint against Peter-

son, the Durnans, and Michael Dolan, Janet Dolan, and Carol Dolan (the Dolans). Domalik, a passenger on the motorcycle, intervened in the case and filed a complaint against Douglass, Peterson, and the Dolans. The Dolans are not parties to this appeal.

Counts I and II of Douglass' complaint were directed against the Dolans. Count I alleged that the Dolans were the owners and/or keepers of Lady and that they violated the Illinois Domestic Animals Running At Large Act (Act) (510 ILCS 55/1 *et seq.* (West 1992)) by allowing Lady to run at large on May 5, 1993. Count II alleged that the Dolans acted negligently.

Counts III and IV of Douglass' complaint were directed against Peterson. Count III alleged that Peterson violated the Act because she was an owner and/or keeper of Lady. Count IV alleged that Peterson acted negligently.

Count V of Douglass' complaint was directed against the Durnans and was based on a claim of negligence. It alleged that the Durnans owned, maintained, and controlled the property from which Lady escaped and that they had a duty to ensure that Lady could not gain access to public highways from the property. It further alleged that the Durnans breached this duty by failing to keep Lady on the property and by failing to construct, erect, and maintain a fence which could have prevented Lady from wandering off the property.

Count I of Domalik's complaint was directed against Douglass and was based on a claim of negligence. Counts II and III of the complaint were directed against the Dolans. Counts I, II, and III are not at issue on appeal. Counts IV and V were directed against Peterson. Count IV was based on the Act and mirrored count III of Douglass' complaint; count V was based on common-law negligence and mirrored count IV of Douglass' complaint.

The following uncontested facts are from the various depositions and affidavits of the parties taken during discovery. Peterson had Lady "foaled" in 1987. At Lady's birth, Peterson obtained a "Certificate of Foal Registration" from the Jockey Club, which certified her ownership of Lady. The bottom of the certificate contains the following statements: "Certificate to be preserved and transferred to purchaser gratis if this horse is sold. Possession and presentation of this certificate is a requirement to race or breed the horse it identifies."

On September 1, 1992, Peterson sold Lady to Carol Dolan, the minor daughter of Janet and Michael Dolan, for $700. Carol Dolan gave Peterson $50 as a down payment and agreed to pay the remaining $650 in installments. Carol Dolan also agreed to pay the full amount owed to Peterson if she resold Lady. On the day of the sale,

Peterson prepared and signed the following handwritten "bill of sale":

"I have sold to Carol Dolan one bay mare, thoroughbred, registered name Lady Coopersteen, for the sum of $700.00. I have received $50.00 cash down payment with the rest of the amount to be made in payments. The balance is due immediately if the horse is transferred or sold by her to any other party."

At the time of the sale, Peterson recorded the transfer of ownership of Lady in the appropriate space on the "Certificate of Foal Registration." Peterson retained possession of the certificate "for security," although she intended to give it to Carol Dolan after she had been paid in full for Lady. After the sale, Carol Dolan took possession of Lady, and Peterson neither housed Lady on her property nor incurred any expenses associated with Lady's maintenance. As of the date of the accident, Carol Dolan still owed Peterson $170.

On August 5, 1994, Peterson filed a motion for summary judgment regarding counts III and IV of Douglass' complaint and counts IV and V of Domalik's complaint. Peterson argued that she was not an owner or keeper of Lady at the time of the accident. On May 22, 1995, the Durnans filed a motion for summary judgment regarding count V of Douglass' complaint. The Durnans argued that count V failed to state a cause of action because they did not owe a duty to Douglass.

On July 27, 1995, the trial court entered an order granting Peterson's and the Durnans' motions for summary judgment. Douglass appeals the trial court's order granting both motions; Domalik appeals only that part of the order which granted Peterson summary judgment on counts IV and V of his complaint.

There are two issues on appeal: (1) whether the Durnans owed Douglass a duty of care; and (2) whether a genuine issue of material fact exists as to whether Peterson was an owner of Lady at the time of the accident. We note that the first issue relates solely to count V of Douglass' complaint against the Durnans, whereas the second issue relates to count III and IV of Douglass' complaint and counts IV and V of Domalik's complaint.

This is an appeal of summary judgments entered pursuant to section 2—1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1005 (West 1994)). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party's right to judgment is clear and free from doubt. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). To aid in this determination, the trial court must consider the affidavits, depositions, admissions, exhibits, and pleadings on file and construe them strictly

against the movant and liberally in favor of the nonmovant. *Allstate Insurance Co. v. Smiley*, 276 Ill. App. 3d 971, 976 (1995). Where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact. *Smiley*, 276 Ill. App. 3d at 977. In cases involving summary judgment, we conduct a *de novo* review of the evidence in the record. *Espinoza*, 165 Ill. 2d at 113.

The first issue on appeal is whether the Durnans owed Douglass a duty of care. Douglass argues that the Durnans owed him such a duty because they owned, maintained, and controlled the property from which Lady escaped. The Durnans respond that only the owners or keepers of estray animals have a duty to guard against injuries caused by their estray animals. After reviewing the Act and the relevant case law, we conclude that the Durnans did not owe a duty to Douglass.

■ Initially, we note that Douglass argues that we should review the order granting the Durnans' motion for summary judgment under the standard of review for section 2—615 motions to dismiss (see 735 ILCS 5/2—615 (West 1994)) because the motion argued that the complaint failed to state a cause of action. Although a section 2—615 motion is the proper method to dismiss a complaint for failure to state a cause of action (see *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1068 (1992)) ("A motion to dismiss under section 2—615 attacks only the legal sufficiency of the complaint"), a court may enter summary judgment where there is no showing of the existence of a duty on the part of the defendant to the plaintiff (*Lewis v. Royal Globe Insurance Co.*, 170 Ill. App. 3d 516, 523 (1988)). In any event, the dispute between which standard of review to apply is immaterial in this case. Even under the section 2—615 standard of review, we would conclude that the Durnans did not owe a duty to Douglass.

■ Section 1 of the Act, which was first enacted in the 1870s, provides that no person or owner of livestock shall allow livestock to run at large in the state. 510 ILCS 55/1 (West 1992). Section 1 further provides:

> "All owners of livestock shall provide the necessary restraints to prevent such livestock from so running at large and shall be liable in civil action for all damages occasioned by such animals running at large; Provided, that no owner or keeper of such animals shall be liable for damages in any civil suit for injury to the person or property of another caused by the running at large thereof, without the knowledge of such owner or keeper, when

such owner or keeper can establish that he used reasonable care in restraining such animals from so running at large." 510 ILCS 55/1 (West 1992).

Section 1.1 defines "owner" as "any person who (a) has a right of property in an animal, (b) keeps or harbors an animal, (c) has an animal in his care, or (d) acts as custodian of an animal." 510 ILCS 55/1.1 (West 1992).

■ Under Illinois decisional law, liability for injuries caused by estrays must be predicated on the Act. See *Smith v. Gleason*, 152 Ill. App. 3d 346, 348 (1987); *Heyen v. Willis*, 94 Ill. App. 2d 290, 296 (1968). Thus, unless a landowner is an owner or keeper of livestock as contemplated by the Act, the landowner has no common-law duty to guard against injuries to persons caused by livestock that escaped from the landowner's property. *Smith*, 152 Ill. App. 3d at 348; *Heyen*, 94 Ill. App. 2d at 296-97.

■ In this case, count V of Douglass' complaint is a claim based on common-law negligence. Count V alleges that the Durnans owned, maintained, and controlled the property from which Lady escaped and that the Durnans had a duty to ensure that Lady could not gain access to public highways. Count V is not predicated on the Act, and it does not allege that the Durnans were Lady's "owners," as that word is used by the Act. As such, count V fails to allege that the Durnans owed a duty to Douglass. The trial court therefore properly granted the Durnans' motion for summary judgment. See *Smith*, 152 Ill. App. 3d at 348; *Heyen*, 94 Ill. App. 2d at 296-97.

Douglass maintains that *Smith* and *Heyen* wrongly held that liability for injuries caused by estrays must be predicated on the Act. According to Douglass, the Act does not preempt common-law actions against landowners.

We disagree. The issue is not one of "preemption," but rather whether Illinois law has ever imposed liability on landowners for injuries caused by livestock that escaped from the landowners' property. If Illinois law does not impose liability in such a situation and if the Act does not apply, then count V of Douglass' complaint fails to state a cause of action.

Under English common law, every owner of livestock was bound to keep them from trespassing on the close of another. *Bulpit v. Matthews*, 145 Ill. 345, 349 (1893). Our supreme court, however, has expressly held that an owner of livestock is not liable for injuries or damages caused by his estray. See, *e.g.*, *Bulpit*, 145 Ill. at 350-51; *Illinois Central R.R. Co. v. Arnold*, 47 Ill. 173, 174 (1868); *Seeley v. Peters*, 10 Ill. 130, 142-43 (1848). As explained in *Seeley*:

"However well adapted the rule of the Common Law may be to a

densely populated country like England, it is surely but ill adapted to a new country like ours. *** This State is unlike any of the eastern States in their early settlement, because, from the scarcity of timber, it must be many years yet before our extensive prairies can be fenced, and their luxuriant growth sufficient for thousands of cattle must be suffered to rot and decay where it grows, unless the settlers upon their borders are permitted to turn their cattle upon them.

*** Settlers have located themselves contiguous to prairies for the very purpose of getting the benefit of the range. The right of all to pasture their cattle upon uninclosed ground is universally conceded." *Seeley*, 10 Ill. at 142.

As noted, *Smith* and *Heyen* held that a landowner also has no common-law duty to guard against injuries to persons caused by livestock which escaped from the landowner's property. See *Smith*, 152 Ill. App. 3d at 348; *Heyen*, 94 Ill. App. 2d at 296. Outside of *Smith* and *Heyen*, the parties have not cited, and we have not located, any case which dealt with whether a landowner was liable for injuries caused by an estray which escaped from the landowner's property. Nonetheless, we believe, as the *Smith* and *Heyen* courts apparently believed, that if an owner of an estray is not liable for injuries caused by the estray, then a landowner, who generally exercises less control over an estray than the owner, also is not liable for injuries caused by the estray. Absent case law to the contrary, we hold that *Smith* and *Heyen* were properly decided and are applicable to the case at bar. Of course, liability may still be imposed on a landowner under the Act if the landowner is an "owner or keeper" of the livestock.

Douglass also distinguishes *Smith* and *Heyen* on the ground that the landowners in those cases leased the property to the livestock owners, whereas in this case he alleged that the Durnans owned, maintained, and controlled the property from which Lady escaped. Besides mentioning this distinction, however, Douglass fails to explain why the distinction is relevant. In any case, there is nothing in *Smith* and *Heyen* to suggest that they would have been decided differently if the plaintiffs had alleged that the defendants maintained and controlled the property. As such, *Smith* and *Heyen* are applicable in the present case.

Finally, we briefly note Douglass' concern that following *Smith* and *Heyen* in this case "would be to declare open season on motorists in McHenry County (and elsewhere in the State of Illinois)." However, as the *Heyen* court recognized:

"The likelihood of injury or damage from estrays, and the attendant duty to use care to prevent such injury or damage, lies not in

the place where animals may be kept but in their propensity to roam, their wanderlust. Thus, the duty to guard against injury or damage by estrays is cast by law upon the owner or keeper of the animals, and liability for injury or damage caused by them must be predicated upon [the Act]." 94 Ill. App. 2d at 296.

We agree with these sentiments and, accordingly, affirm the trial court's order entering summary judgment in favor of the Durnans on count V of Douglass' complaint.

■ The second issue on appeal is whether a genuine issue of material fact exists as to whether Peterson was an owner of Lady at the time of the accident. The Act imposes liability on all owners or keepers of livestock running at large. 510 ILCS 55/1 (West 1992). The Act defines "owner" as "any person who (a) has a *right of property* in an animal, (b) keeps or harbors an animal, (c) has an animal in his care, or (d) acts as custodian of an animal." (Emphasis added.) 510 ILCS 55/1.1 (West 1992).

Douglass and Domalik argue that a genuine issue of material fact exists regarding whether Peterson had a "right of property" in Lady and, thus, whether she was an owner of Lady. In support of their position, Douglass and Domalik direct our attention to the following evidence: (1) Carol Dolan only made a $50 down payment on Lady, with the balance owed to be paid in installments; (2) Peterson intended to retain the "Certificate of Foal Registration" until she had been paid in full; (3) the certificate stated that it was to be transferred to the purchaser if the horse was sold; and (4) if Carol Dolan sold Lady, any balance owed to Peterson was due immediately. Douglass and Domalik maintain that this evidence generates a triable issue of fact.

■ None of the parties have cited, and we have not located, any case that defines "right of property" as that phrase is used in section 1.1 of the Act. Despite this absence of case law, we are satisfied that no genuine issue of material fact exists regarding whether Peterson had a "right of property" in Lady at the time of the accident. The evidence reveals that Carol Dolan agreed to pay $700 for Lady, that she made a $50 down payment on Lady on the day of the sale, that she took possession of Lady about two days after the sale, and that Peterson was not responsible for any of Lady's expenses after Carol Dolan took possession of her. The evidence further demonstrates that Carol Dolan had the right to resell or breed Lady at her discretion after the sale. Finally, Peterson made a contemporaneous recording of the transfer of ownership to Carol Dolan in the appropriate place on the certificate. Under these circumstances, Peterson did not have a "right of property" in Lady.

The fact that Peterson was still owed part of the purchase price of Lady, or that she was entitled to be paid if Lady was resold, is irrelevant. These "rights" were not "rights of property" in Lady. Rather, they were rights that Peterson could enforce in a breach of contract action against Carol Dolan if she failed to pay the entire purchase price.

Similarly, it is irrelevant that Peterson retained the certificate after the sale. By its terms, as well as Peterson's deposition testimony, a certificate is only necessary if the horse is going to be raced or bred. There is no evidence to suggest that Peterson's possession of the certificate, particularly in light of the fact that the transfer of ownership was recorded on it, created an enforceable right in Lady. In fact, the parties do not dispute that Carol Dolan had the right to resell Lady at her discretion. As a result, the facts of this case admit of one reasonable conclusion: Peterson did not have a "right of property" in Lady. The trial court therefore properly entered summary judgment for Peterson on counts III and IV of Douglass' complaint and counts IV and V of Domalik's complaint.

For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

GEIGER, P.J., and RATHJE, J., concur.