# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Cieslewicz v. Forest Preserve District*, 2012 IL App (1st) 100801

---

| | |
|---|---|
| Appellate Court Caption | STEVEN CIESLEWICZ, Independent Administrator of the Estate of Anna M. Cieslewicz, Deceased, Plaintiff-Appellant, v. FOREST PRESERVE DISTRICT OF COOK COUNTY, a Municipal Corporation, Defendant-Appellee.–MARY MURPHY-SMITH and CHARLES SMITH, Plaintiffs-Appellants, v. FOREST PRESERVE DISTRICT OF COOK COUNTY, a Municipal Corporation, Defendant-Appellee. |
| District & No. | First District, Sixth Division <br> Docket Nos. 1-10-0801, 1-10-0812 cons. |
| Filed | May 17, 2012 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the death and injuries caused by dogs on defendant forest preserve district's property, the trial court's entry of summary judgment for defendant was affirmed on the ground that defendant was not, as a matter of law, an owner of the dogs for purposes of the Animal Control Act, notwithstanding the fact that defendant was notified two months before the attacks that dogs were present near the trail where the attacks occurred, since the evidence failed to establish that defendant knowingly permitted the dogs to be on its property, that defendant's employees ever saw the dogs before the attacks, or that defendant exercised any care, custody or control over the dogs. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 03-L-1949, 03-L-1705 cons.; the Hon. Bill Taylor and the Hon. John Ward, Judges, presiding. |

| Judgment | Affirmed. |
|---|---|
| Counsel on Appeal | Motherway & Napleton, L.L.P. (Robert J. Napleton and Nicholas J. Motherway, of counsel), Law Offices of John M. Saletta, P.C. (John M. Saletta, of counsel), and Clifford Law Offices, P.C. (Kevin P. Durkin, Michael S. Krzak, and Colin H. Dunn, of counsel), all of Chicago, and Law Offices of Lynn D. Dowd, of Wheaton (Lynn D. Dowd, of counsel), for appellants. |
| | Johnson & Bell, Ltd., of Chicago (Joann T. Angarola, David M. Macksey, and Garrett L. Boehm, Jr., of Chicago, for appellee. |
| | Brian Day, Ashley Niebur, and Roger Huebner, all Springfield, for *amicus curiae* Illinois Municipal League. |
| | Jason Anselment and Peter Murphy, both of Springfield, for *amicus curiae* Illinois Association of Park Districts. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion. Presiding Justice R. Gordon and Justice Garcia concurred in the judgment and opinion. |

## OPINION

¶ 1     Plaintiffs, Steven Cieslewicz and Mary Murphy-Smith and Charles Smith, brought the underlying case as a result of dog attacks occurring on property owned by defendant, Forest Preserve District of Cook County (Forest Preserve). Upon reconsideration, the trial court granted defendant's motion for summary judgment, finding defendant was not an "owner" as defined by the Animal Control Act (Act) (510 ILCS 5/1-27 (West 2002)) and, therefore, was not liable under the Act for the injuries caused by the offending dogs. On appeal, plaintiffs contend the trial court erred in finding as a matter of law that defendant was not an owner pursuant to the Act. Based on the following, we affirm.

¶ 2                                        FACTS

¶ 3     On January 12, 2003, Anna Cieslewicz and Mary Murphy-Smith were attacked, in separate incidents, by two dogs on or near the Major Taylor Trail in the Dan Ryan Woods, which is within defendant's property. Anna died and Mary was severely injured. On the date

of the attacks, Forest Preserve officers James Kapsalis and Reginald Ross located one of the dogs, a brown and black pit bull, and killed it when the dog charged at Officer Kapsalis. The second attack dog, a white and brown mixed breed, was trapped on January 16, 2003.

¶ 4     Prior to the attacks, a number of individuals reported seeing aggressive dogs in the area. According to her deposition testimony, one month before the attack, Mary was charged at and threatened by a pit bull and approximately four other dogs. She immediately reported the incident to two Forest Preserve officers and was told that the situation would be handled. Mary later identified the pit bull as having been involved on both occasions. John Trice provided an affidavit in which he stated that he encountered two pit bulls between 30 to 40 times from November 2002 until January 12, 2003, while jogging near the Major Taylor Trail. Trice said he was accosted by the dogs on each occasion. Trice reported the first incident to a Forest Preserve park ranger and was told the situation would be taken care of. Trice later identified photographs of the pit bulls, which were the same dogs that attacked Mary. Thomas Justic provided an affidavit in which he stated that he encountered aggressive dogs while riding his bicycle in the Dan Ryan Woods near the location of the attacks. On December 28, 2002, Justic saw one pit bull that snarled and barked when he passed and became more aggressive when Justic passed again. On January 4, 2003, Justic encountered the same pit bull while riding his bicycle. The pit bull, however, was joined by two other dogs, all of which chased Justic's bicycle. Justic described the pit bull as "much more aggressive" on the second encounter. Justic attempted to report the incidents to a Forest Preserve park ranger, but called the City of Chicago animal control department when he was unsuccessful at locating a park ranger.

¶ 5     Defendant does not have an animal control department. The City of Chicago and Cook County animal control departments service defendant's property. Darrell James Howell, a division superintendent of maintenance for the Forest Preserve, testified at his deposition that he observed stray dogs in the Dan Ryan Woods every three or four months over the course of his 15-year career. When a stray was seen, Howell was to call the City of Chicago and Cook County animal control departments. Howell said his staff patrolled the woods two or three times per week for strays. Howell additionally saw animal control patrolling the woods about two to three times per week. According to Officer Ross's written discovery answers, he spent one-third of his time at work patrolling the Dan Ryan Woods. Officer Ross approximated that he received stray dog reports from citizens every two months and from defendant's maintenance division every two to three months. While canvassing the Dan Ryan Woods, Officer Ross spotted a pit bull twice. When Officer Ross observed any stray dogs, he contacted Cook County animal control or attempted to run the dog out of the woods himself. Officer Kapsalis testified at his deposition that he frequently patrolled the Dan Ryan Woods and never saw a loose or stray pit bull. Forest Preserve officer James Womack testified at his deposition that, when he observed a stray dog in the Dan Ryan Woods, he took steps to force the animal from the property and called animal control if unsuccessful. According to Jessie Young, an animal control officer for Cook County, he patrolled the Dan Ryan Woods once per week for approximately 45 minutes to search for stray animals.

¶ 6     According to records retained by the Cook County animal control department, a total of three dogs, including two pit bulls, were caught and removed from the Dan Ryan Woods on

June 5, 2002, July 26, 2002, and January 9, 2003. According to records retained by the City of Chicago animal control department, animal control officers were dispatched to the Dan Ryan Woods to investigate at least nine stray dog complaints in 2002; however, in most instances, the animal was gone by the time the officer arrived.

¶ 7     On May 2, 2008, the trial court denied defendant's motion for summary judgment, finding that there were genuine issues of material fact precluding judgment as a matter of law as to the question of whether defendant exhibited ownership over the dogs at issue by "knowingly permitting" the dogs to remain on defendant's property as provided by the Act. Defendant filed a motion to reconsider. The trial court granted the motion to reconsider and, on November 19, 2009, granted defendant's motion for summary judgment, finding there were no genuine issues of material fact where plaintiffs did not provide sufficient evidence to demonstrate defendant was an owner of the dogs. Specifically, the trial court found that plaintiffs were required to show that defendant did more than "merely allow the dogs to be temporarily" on defendant's property, such that defendant "maintained any control over the dogs or that [defendant] acted as a harborer or custodian of the dogs."

¶ 8                                    DECISION

¶ 9     Plaintiffs contend the trial court erred in granting summary judgment where they presented evidence demonstrating that defendant was the statutory owner of the offending dogs and was responsible for failing to remove the dogs from the Dan Ryan Woods prior to the attacks.

¶ 10    Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2002). When reviewing a motion for summary judgment, a court must consider all of the evidence strictly against the movant and in a light most favorable to the nonmoving party. *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284, 769 N.E.2d 18 (2002). We review *de novo* a trial court's decision granting summary judgment. *McNamee v. State*, 173 Ill. 2d 433, 438, 672 N.E.2d 1159 (1996).

¶ 11    The Act, at the relevant time, provided:

"If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained." 510 ILCS 5/16 (West 2002).

"Owner" was defined as:

"[A]ny person having a right of property in a dog or other animal, or who keeps or harbors a dog or other animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog or other domestic animal to remain on any premises occupied by him." 510 ILCS 5/2.16 (West 2002).

The statute was amended, effective August 19, 2003, to remove the language "who knowingly permits a dog or other domestic animal to remain on any premises occupied by him" from the definition of "owner." Pub. Act 93-548, § 5 (eff. Aug. 19, 2003) (amending

-4-

510 ILCS 5/2.16 (West 2004)). The statute was amended yet again, effective August 22, 2005, and redefined "owner" as one "who knowingly permits a dog to remain on any premises occupied by him or her." Pub. Act 94-639 (eff. Aug. 22, 2005) (amending 510 ILCS 5/2.16 (West 2006)). Whether a defendant is a statutory owner is usually a question of fact; however, summary judgment may be found where the undisputed facts show there is no genuine issue. *Goennenwein v. Rasof*, 296 Ill. App. 3d 650, 653, 695 N.E.2d 541 (1998).

¶ 12    The parties only contest the meaning of "owner" within the Act and whether defendant met that definition. All other elements of section 2.16 of the Act are undisputed. Plaintiffs submit that the Act provides five methods of establishing ownership and that the facts demonstrate defendant "knowingly permitted" the pit bulls to remain in the Dan Ryan Woods. In contrast, defendant contends that statutory ownership requires evidence demonstrating some degree of care, custody, or control, which plaintiffs failed to establish.

¶ 13    While interpreting the definition of ownership under the Act, the supreme court has instructed that the statute requires "some measure of care, custody, or control." *Steinberg v. Petta*, 114 Ill. 2d 496, 501, 501 N.E.2d 1263 (1986). In *Steinberg*, the supreme court specifically analyzed the definition of "harboring or keeping an animal." However, the Act at that time included the language at issue here, *i.e.*, "knowingly permits," within the definition of owner, and the supreme court expressly stated that the facts were not sufficient to demonstrate ownership where "[t]he evidence presented at trial established nothing more than that the defendant, acting through his agent, permitted the tenants to keep a dog on the premises." *Id*. at 502. In other words, the supreme court found that "knowingly permitting" a dog to be on the premises was not enough to establish ownership; instead, ownership required evidence that a dog was under the defendant's care, custody, or control. *Id*. The appellate court consistently has interpreted ownership in line with *Steinberg*. Accord *Goennenwein*, 296 Ill. App. 3d at 654; *Frost v. Robave, Inc.*, 296 Ill. App. 3d 528, 533, 694 N.E.2d 581 (1998) (finding that the statute does not provide three separate categories of liability, namely, care, custody, and knowing permission; instead, they are examples of keeper or harborer or "at the least, usually would be encompassed within the term 'keeping' or 'harboring' "); *Severson v. Ring*, 244 Ill. App. 3d 453, 615 N.E.2d 1 (1993); *Papesh v. Matesevac*, 223 Ill. App. 3d 189, 191, 584 N.E.2d 549 (1991); *Thompson v. Dawson*, 136 Ill. App. 3d 695, 699, 483 N.E.2d 1072 (1985).

¶ 14    In *Goennenwein*, the Second District considered whether a defendant who "knowingly permits" a dog to be on his property is considered to be an "owner." *Goennenwein*, 296 Ill. App. 3d at 653. The court concluded that "[m]erely allowing an animal to be temporarily on one's premises does not make the landowner a keeper or harborer of the animal." *Id*. In so concluding, the court recognized that the primary goal of the Act is to encourage tight control of animals for the public's protection. *Id*. The court, however, looked at the facts of the case because there must be " 'a factual and reasonable basis to impose liability.' " *Id*. (quoting *Meyer v. Naperville Manner, Inc.*, 262 Ill. App. 3d 141, 148, 634 N.E.2d 411 (1994)). Comparing the facts in *Goennenwein* to those in *Severson*, where the appellate court ruled that allowing a dog to be left tied to a tree in a defendant's yard did not cause the defendant to be considered an owner, the *Goennenwein* court found the defendant in that case did not exercise any custody, care, or control of the dog at issue where the defendant merely allowed

the dog to be on his property while the dog's owner remained present and in control of the animal. *Id*. at 654.

¶ 15    Turning to the evidence presented here, we must determine whether there are questions of fact regarding if the attack dogs were more than temporarily on defendant's land with defendant exercising some care, custody, or control over the dogs. Viewing the evidence in a light most favorable to plaintiffs, we conclude there are no questions of fact precluding summary judgment.

¶ 16    Primarily, we find the evidence fails even to establish that defendant knowingly permitted the attack dogs to be on its property. While there was evidence that the pit bull was seen as early as November 2002, and was immediately reported to defendant's park ranger, there was no evidence that any of defendant's employees ever observed the attack dogs in the two months between Trice's report in November 2002 and the attacks on January 12, 2003. Plaintiffs' argument, therefore, is that defendant acted as an owner by failing to evict the offending dogs from its property once the pit bull's existence was known in November 2002. Plaintiff, however, has not provided, nor are we aware of, any authority demonstrating that defendant's knowledge of the existence of an aggressive pit bull established that it knowingly permitted the dogs to remain on the property. Rather, the evidence shows that defendant prohibited the existence of stray animals and had numerous individuals performing regular patrols in an attempt to locate stray animals. In fact, the Cook County animal control records demonstrated that three dogs, two of which were pit bulls, were removed from the Dan Ryan Woods on June 5, 2002, July 26, 2002, and January 9, 2003. Therefore, unlike the defendant in *Steinberg,* who was an absentee landlord that permitted his tenant to keep a dog on the premises (*Steinberg*, 114 Ill. 2d at 502), the defendant in *Goenenwein,* who allowed her dinner guest's dog to remain at her home (*Goennenwein*, 296 Ill. App. 3d at 653) or the defendant in *Severson*, who permitted the owner to leave the dog tied to a tree on the defendant's property (*Severson*, 244 Ill. App. 3d at 457), our defendant never provided authorization for the offending dogs to be in the Dan Ryan Woods.

¶ 17    Moreover, the parties' experts disputed whether the offending dogs were stray animals or the extent to which they "remained" on defendant's property. Linda Case, plaintiffs' expert, approximated that the dogs lived within an area of land owned by multiple entities, namely, the City of Chicago, private parties, and defendant for two months prior to the attacks. Although Case described the attacks as territorial in nature wherein the dogs were defending established territory at that location, Case based some of her argument on the fact that a man had been feeding and had provided an igloo shelter for puppies of the mixed-breed on the western border of the West Englewood Frick Center, which was located to the east of the Major Taylor Trail and was not owned by defendant. In addition, multiple reports provided that the dogs entered the location where the attacks occurred from the east, which was property owned by the City of Chicago. The offending dogs, therefore, were on defendant's property in a transient capacity.

¶ 18    In addition, plaintiffs' evidence attempting to establish any level of care, custody, or control merely demonstrates that defendant exercised policies and practices to help keep the Dan Ryan Woods free from stray animals *in general*. Similar to the facts in *Heyen v. Willis*, 94 Ill. App. 2d 290, 295, 236 N.E.2d 580 (1968), where the defendant landowner that had

-6-

leased his pasture to a cattle owner was not considered an owner of injurious cattle because the Act "requires more than the passive ownership of grazing lands," the evidence in this case does not show that defendant exercised any care, custody, or control over *the* offending dogs. Rather, at most, the evidence demonstrated that Forest Preserve park rangers were notified twice, by Mary and Trice, that an aggressive pit bull had been spotted near the Major Taylor Trail. Therefore, defendant was no more than a passive owner of the property temporarily inhabited by a dog. The Forest Preserve employees exhibited no characteristics of having kept or harbored the animal on the property. *Frost*, 296 Ill. App. 3d at 534, 536-37 (a keeper is one who "had control over the animal at the time of the injury or immediately prior to the injury" and a harborer is one who provided food and shelter on a semi-permanent nature). This case is, therefore, distinguishable from *Beggs v. Griffith*, 393 Ill. App. 3d 1050, 913 N.E.2d 1230 (2009), where the defendant-landowner exposed the plaintiff to horses he permitted in his barn while conducting a property showing. *Beggs*, 393 Ill. App. 3d at 1056. The *Beggs* defendant had the ability to control the injurious animal at the precise time it caused the injury. *Id*.

¶ 19    In sum, we find that defendant was not an owner of the offending dogs as a matter of law and, therefore, summary judgment was proper.

¶ 20                                   CONCLUSION

¶ 21    We affirm the trial court's order granting summary judgment.

¶ 22    Affirmed.